## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------x

|  |  |
|---|---|
| | : Chapter 11 |
| *In re* | : |
| | : Case No. 14-10833 (CSS) |
| GRIDWAY ENERGY HOLDINGS, INC., *et al.*, | : |
| | : Jointly Administered |
| Debtors.[1] | : |
| | : **Ref. Docket No.: 3** |

--------------------------------------------------------------x

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF RUST CONSULTING / OMNI BANKRUPTCY AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS, EFFECTIVE AS OF THE COMMENCEMENT DATE

Upon consideration of the Application[2] of the Debtors for entry of an order authorizing the Debtors to retain and employ Rust Consulting / Omni Bankruptcy ("**Rust**") as the claims and noticing agent for the Debtors, all as more fully set forth in the Application, pursuant to 28 U.S.C. § 156(c); and upon consideration of the Deutch Declaration in support thereof and the First Day Declaration; and it appearing that this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that venue of these chapter 11 cases and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Gridway Energy Holdings, Inc. (5072); Glacial Energy Holdings (3292); Glacial Energy, Inc. (1189); Glacial Energy of New York (0776); Glacial Energy of New England, Inc. (1724); Glacial Energy of Maryland, Inc. (7173); Glacial Energy of California, Inc. (1795 ); Glacial Energy of Illinois, Inc. (1796); Glacial Energy of New Jersey, Inc. (8671); Glacial Energy of Pennsylvania, Inc. (9762); Glacial Energy of Texas (1517); Glacial Energy of Washington DC, Inc. (5548); Glacial Energy of Ohio, Inc. (0103); Glacial Energy of Michigan, Inc. (7110); Glacial Natural Gas, Inc. (0165); Negawatt Business Solutions (6299); Negawatt Business Solutions, Inc. (f/k/a/ Gridway Energy Partners, Inc.) (7086); Ziphany, L.L.C. (7934); and Glacial Energy VI, LLC (1142). The location of the headquarters of Glacial Energy VI, LLC is 5326 Yacht Haven Grande, Box 36, St. Thomas, VI 00802. The location of the headquarters for the remaining Debtors is 24 Massachusetts Route 6A, Sandwich, MA 02563.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

01:15312493.2

proceeding pursuant to 28 U.S.C. § 157; and it appearing that the Debtors have complied with the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* dated February 1, 2012; and this Court having determined the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Application has been given and that, except as otherwise ordered herein, no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      Notwithstanding the terms of the Services Agreement attached to the Application, the Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to employ and retain Rust as Claims Agent effective as of the Commencement Date under the terms of the Services Agreement, and Rust is authorized and directed to perform the Claims and Noticing Services as set forth in the Application and Engagement Letter.

3.      Rust shall serve as the custodian of court records, is designated as the authorized repository for all proofs of claim filed in these cases, and is authorized and directed to maintain the official claims register for the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Rust is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      Rust is authorized to take any such other action to comply with the Claims and Noticing Services and related duties set forth in the Application and the Services Agreement.

6.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Rust shall be administrative expenses of the Debtors' estates, and the Debtors are authorized to pay Rust's fees and expenses for Claims and Noticing Services, as set forth in the Services Agreement and in the ordinary course of business, without further Court order and without the necessity of Rust filing fee applications with this Court.

7.      Rust shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred and shall serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, and any party-in-interest who specifically requests service of the monthly invoices.

8.      Parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Services Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      The indemnification provisions of the Services Agreement are approved, subject to the following clarifications:

  a.  Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, Rust, in accordance with the Services Agreement and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Rust's performance of services pursuant to this Order and the Services Agreement;

  b.  Rust shall not be entitled to indemnification, contribution, or reimbursement for services other than claims agent services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

  c.  Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify Rust, or provide contribution or reimbursement to Rust, for any claim or expense to the extent that it is (i) judicially determined (the determination having

01:15312493.2

3

become final and no longer subject to appeal) to have arisen from Rust's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Rust's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Rust should not receive indemnification, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order; and

d.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, Rust believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, Rust must file an application for such amounts before this Court, and the Debtors may not pay any such amounts to Rust before the entry of an order by this Court approving payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment by Rust for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligations to indemnify Rust. All parties in interest shall retain the right to object to any demand by Rust for indemnification, contribution, or reimbursement.

e.  Notwithstanding anything contained in the Services Agreement to the contrary, Rusts' liability shall not be limited to (i) the total amount billed or billable to the Debtors for the portion of the particular work which gave rise to the loss or damage or (ii) the total amount billed to the Debtors and paid to Rust for the services contemplated under the Services Agreement.

*9. 10.*   In the event Rust is unable to provide the services set out in this Order, Rust will immediately notify the Clerk and Debtors' counsel and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

01:15312493.2

4

11. The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Rust but is not specifically authorized by this Order.

12. Rust shall not cease providing claims processing services during the Chapter 11 Cases for any reason without prior order of this Court authorizing Rust to do so; provided, however, that Rust may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtors, the Debtors' counsel of record in the Chapter 11 Cases, the Office of the United States Trustee and any official committee of creditors appointed in this case by facsimile or overnight delivery; provided further, that except as expressly provided herein, the Debtors and Rust may otherwise terminate or suspend other services as provided under the Services Agreement.

13. Nothing herein obligates a successor chapter 7 trustee or chapter 11 trustee to employ Rust.

14. The Debtors and Rust are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

15. In the event of any inconsistency between the Services Agreement, the Application and this Order, the Order shall govern.

16. ~~INJ~~   Notwithstanding any term in the Services Agreement to the contrary, this

Court retains jurisdiction with respect to all matters arising from or related to the implementation

of this Order.

Dated: April __11__, 2014
          Wilmington, Delaware

Christopher S. Sontchi
United States Bankruptcy Judge