# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: Chapter 11
*In re* :
: Case No. 14-10833 (CSS)
GRIDWAY ENERGY HOLDINGS, INC., *et al.*, :
: Jointly Administered
Debtors.[1] :
: **Ref. Docket No.: 13**
---------------------------------------------------------------x

## ORDER UNDER 11 U.S.C. §§ 105, 363, AND 365 AND FED. R. BANKR. P. 6004 AND 6006 (A) APPROVING BIDDING PROCEDURES, INCLUDING, WITHOUT LIMITATION, EXPENSE REIMBURSEMENT PROVISIONS, (B) APPROVING FORM AND NOTICE OF SALE, ASSUMPTION AND ASSIGNMENT, INCLUDING CURE AMOUNT CALCULATION, (C) SCHEDULING SALE HEARING, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2], of Gridway Energy Holdings, Inc. and its above-captioned debtor affiliates (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned bankruptcy cases, for an order (the "Sale Procedures Order") pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 6004 and 6006 (a) authorizing and approving bidding procedures (the "Bidding Procedures") for (i) submitting bids for the purchase of the Debtors' assets (the "Purchased Assets"), which are specified in that certain Asset Purchase Agreement by and among the Debtors and Vantage

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Gridway Energy Holdings, Inc. (5072); Glacial Energy Holdings (3292); Glacial Energy, Inc. (1189); Glacial Energy of New York (0776); Glacial Energy of New England, Inc. (1724); Glacial Energy of Maryland, Inc. (7173); Glacial Energy of California, Inc. (1795 ); Glacial Energy of Illinois, Inc. (1796); Glacial Energy of New Jersey, Inc. (8671); Glacial Energy of Pennsylvania, Inc. (9762); Glacial Energy of Texas (1517); Glacial Energy of Washington DC, Inc. (5548); Glacial Energy of Ohio, Inc. (0103); Glacial Energy of Michigan, Inc. (7110); Glacial Natural Gas, Inc. (0165); Negawatt Business Solutions (6299); Negawatt Business Solutions, Inc. (f/k/a/ Gridway Energy Partners, Inc.) (7086); Ziphany, L.L.C. (7934); and Glacial Energy VI, LLC (1142). The location of the headquarters of Glacial Energy VI, LLC is 5326 Yacht Haven Grande, Box 36, St. Thomas, VI 00802. The location of the headquarters for the remaining Debtors is 24 Massachusetts 6A, Sandwich, MA 02563.

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

01:15315393.5

Commodities Financial Services I, LLC annexed to the Motion (the "APA"), and (ii) conducting an auction for the Purchased Assets (the "Auction"); (b) authorizing and approving the bid protections (the "Stalking Horse Protections") to Vantage Commodities Financial Services I, LLC ( the "Stalking Horse Bidder") as set forth below and in the APA; (c) authorizing and approving procedures (the "Assumption and Assignment Procedures") for the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") in connection with the sale (the "Sale") of the Purchased Assets; (d) scheduling (i) a deadline to submit competing and higher bids for the Purchased Assets, (ii) the date and time of the Auction, and (iii) the date and time of the hearing to consider the approval of the proposed sale of the Purchased Assets (the "Sale Hearing"); (e) authorizing the form and manner of notice of the deadline to submit bids for the Purchased Assets, the Auction, and the Sale Hearing; and (f) granting related relief; and this Court having determined that the relief set forth in the Motion is fair and reasonable and is in the best interests of the Debtors, their estates and creditors; and upon the record in these cases and being advised of the Stalking Horse Bidder's agreement that it will not increase the amount of its offer for the Purchased Assets to an amount in excess of the Purchase Price (as defined in the APA) if another Qualified Bid (as defined below) is timely received by the Debtors in accordance with the Bidding Procedures; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED, that**

    A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334;

    B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O);

C. Good and sufficient notice of the Bidding Procedures approved hereby has been given and no other or further notice is required;

D. The Debtors' proposed notice of the Sale Hearing to consider (i) the sale of the Purchased Assets of the Debtors and (ii) the Assumption and Assignment Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the assumption, assignment and sale of the Purchased Assets of the Debtors;

E. The Debtors have demonstrated a sound business justification for utilizing the Bidding Procedures in connection with the sale of the Purchased Assets;

F. The Debtors' request for authorization to remit to the Stalking Horse Bidder the Stalking Horse Protections is reasonable and appropriate, in light of the size and nature of the proposed sale, and the efforts that have been and will be expended by the Stalking Horse Bidder. Pursuant to the terms and conditions of the APA, the Debtors shall remit to the Stalking Horse Bidder an expense reimbursement upon the earlier of (a) the date of the closing of a Third Party Sale (as defined in the APA) or (b) 30 days after the entry of the Bankruptcy Court's order approving such sale, and pursuant to the conditions set forth in the APA; provided, however, that the aggregate amount of the expense reimbursement shall in no event exceed $500,000. The Stalking Horse Protections are necessary to ensure that the Stalking Horse Bidder will continue diligently to pursue its proposed acquisition of the Purchased Assets. The Stalking Horse Protections shall constitute reimbursement for all of the Stalking Horse Bidder's actual, reasonable out of pocket expenses as provided in the APA in an amount not greater than $500,000;

G. For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, previously disclosed a policy

prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. 101(41A)) about individuals to persons that are not affiliated with the Debtors.

H.  The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the return for the Purchased Assets;

I.  The Assumption and Assignment Procedures are fair, reasonable, and appropriate; and

J.  The entry of this Sale Procedures Order is in the best interests of Debtors and their estates and creditors.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:**

1.  The portions of the Motion seeking approval of (i) the Bidding Procedures; (ii) the Stalking Horse Protections; (iii) the Assumption and Assignment Procedures; (iv) the notice procedures; and (v) setting the time, date, and place for the Sale Hearing are GRANTED.

## Bidding Procedures

2.  The Bidding Procedures are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.  The Bidding Procedures, attached hereto as <u>Exhibit A</u>, shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Purchased Assets, and any party desiring to submit a higher or better offer for the Purchased Assets shall do so strictly in accordance with the terms of this Sale Procedures Order and the Bidding Procedures.

4.  As further described in the Bidding Procedures, any entity wanting to participate in the Auction must submit a Qualified Bid in writing to: (i) Debtors' lead counsel Patton Boggs LLP, 2550 M Street N.W., Washington, D.C. 20037, Attention: Alan M. Noskow,

01:15315393.5

Esq. (anoskow@pattonboggs.com) and Mark A. Salzberg, Esq. (msalzberg@pattonboggs.com); (ii) Delaware co-counsel to the Debtors, Young Conaway Stargatt & Taylor LLP, 1000 North King Street, Wilmington, Delaware 19801, Attention: Michael N. Nestor, Esq. (mnestor@ycst.com) and Joseph M. Barry, Esq. (jbarry@ycst.com); (iii) Debtors' financial advisors, Houlihan Lokey, 200 Crescent Court, Suite 1900, Dallas, Texas 75201, Attention: Michael H. Boone (mboone@hl.com); (iv) co-counsel to the Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon Levine, Esq. (SLevine@Lowenstein.com) and Philip J. Gross, Esq. (PGross@Lowenstein.com); (v) Delaware co-counsel to the Committee, The Rosner Law Group LLC, Attention: Frederick B. Rosner, Esq.(Rosner@teamrosner.com) and Julia B. Klein, Esq. (Klein@teamrosner.com), so as to be received not later than 4:00 p.m. (EST) on June 4, 2014.

5. If the Debtors receive a Qualified Bid from an entity other than the Stalking Horse Bidder, the Debtors will conduct an auction (the "Auction") at the offices of Young Conaway Stargatt & Taylor LLP, 1000 North King Street, Wilmington, Delaware 19801, on June 10, 2014 beginning at 10:00 a.m. (EST) (or such later time or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids) to determine the Successful Bid (as defined below). If the Stalking Horse Bid is the only Qualified Bid submitted by the Bid Deadline, as described in the Bidding Procedures, the Debtors shall not hold the Auction and the Stalking Horse Bid will be designated as the Successful Bid (as defined below).

6. Only the Stalking Horse Bidder and such Qualified Bidders will be entitled to make any additional bids at the Auction. Bidding at the Auction will continue until such time as the highest and best offer is determined. The Debtors may adopt rules for the bidding process that, in their judgment will better promote the goals of the bidding process and that are not inconsistent with any of the provisions of the Sale Procedures Order.

01:15315393.5

7. Upon conclusion of the Auction, the Debtors shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale with respect to the Purchased Assets, and shall submit the highest or otherwise best bid (the "Successful Bid", and the bidder submitting the Successful Bid (the "Successful Bidder") for approval by this Court. Bids submitted by the Bid Deadline (as such Bids are modified by a Bidder at the Auction) shall remain open and irrevocable until expressly rejected by the Debtors, which rejection shall be deemed to have occurred upon consummation of the Sale. If, upon conclusion of the Auction, the Stalking Horse Bidder is the Successful Bidder, then the Debtors shall report the same to the Court and shall proceed with seeking approval of a sale and assignment of the Purchased Assets to the Stalking Horse Bidder. If, upon conclusion of the Auction, a bidder other than the Stalking Horse Bidder is the Successful Bidder, then the Debtors shall report the same to the Court and shall proceed with seeking approval of a sale and assignment of the Purchased Assets to such other Successful Bidder. At the time the Debtors submit the Successful Bid to the Court, they shall also identify to the Court the next highest or otherwise best Qualified Bid (if any) (the "Back-Up Bid", and the bidder submitting such Back-Up Bid the "Back-Up Bidder").

8. The Successful Bidder shall be required to consummate the Sale by June 16, 2014, subject to extension by the Debtors. If the Successful Bidder fails to timely consummate the Sale, or any part thereof, then the Back-Up Bidder may be designated by the Debtors as the Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the Sale of the Purchased Assets to the Back-Up Bidder pursuant to the terms of the Back-Up Bid as soon as is commercially reasonable.

9. Any Bidder seeking to acquire the Purchased Assets including but not limited to assignment of the retail electric Customer Contracts (as defined in the APA) in the State of Texas shall either be a certified Retail Electric Provider ("REP") in the State of Texas, or must become a certified REP in the State of Texas in accordance with applicable law prior to the closing of the Sale and/or the assumption of the Customer Contracts (as defined in the APA) from the Debtors. *See, e.g.,* 16 Texas Administrative Code § 25.107.

10. Any Bidder seeking to acquire any of the Purchased Assets including but not limited to the retail electric Customer Contracts (as defined in the APA) in the State of New Hampshire shall either be a registered Competitive Electric Power Supplier ("CEPS") in the State of New Hampshire, or must become a registered CEPS in accordance with applicable law prior to the closing of the Sale and/or the assumption of the Customer Contracts (as defined in the APA) from the Debtors. Any Bidder seeking to acquire any of the Purchased Assets that includes retail natural gas Customer Contracts (as defined in the APA) in the State of New Hampshire shall either be a registered Competitive Natural Gas Supplier ("CNGS") in the State of New Hampshire, or must become a registered CNGS in accordance with applicable law prior to the closing of the Sale and/or the assumption of the Customer Contracts (as defined in the APA) from the Debtors. The Debtors and the Buyer shall comply with all applicable rules of the New Hampshire Public Utilities Commission ("NHPUC") regarding the transfer of service by a CEPS and/or a CNGS, including, but not limited to, N.H. Code Admin. R., Puc 2004.05 and Puc 3004.04.

11. The Sale Hearing shall be held on June 16, 2014 at 11:00 a.m. (ET) before the Honorable Christopher S. Sontchi, United States Bankruptcy Court Judge, Room 6 in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801 (the "Bankruptcy Court") to consider approval of the assumption,

assignment and sale of the Debtors' interests in the Purchased Assets to the Stalking Horse Bidder or successful bidder(s) in connection with the same. The Sale Hearing may be adjourned or rescheduled as provided in the Bidding Procedures, without further notice by an announcement of the adjourned date of the Sale Hearing.

### Stalking Horse Protections

12. The Debtors' selection of Vantage Commodities Financial Services I, LLC as the Stalking Horse Bidder is approved, and the Stalking Horse Bid shall be deemed a Qualified Bid for all purposes of the Bidding Procedures.

13. The proposed expense reimbursement to be provided to the Stalking Horse Bidder, as set forth in the APA, is approved by the Court. The Debtors are authorized and directed, without further action or order by this Court, to provide the expense reimbursement and, upon receipt of supporting documentation, to pay any and all such amounts owed to the Stalking Horse Bidder on account of the Stalking Horse Protections pursuant to the terms of the APA. The expense reimbursement is deemed an administrative expense of the Debtors' estates under section 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and is an actual and necessary cost and expense of preserving the Debtors' estates.

14. The Stalking Horse Bidder shall, pursuant to section 363(k) of the Bankruptcy Code, be permitted, but not compelled, to credit bid (i) the balance due on its post-petition debtor in possession financing facility as of the Auction, and (ii) subject to the rights of any party-in-interest to challenge the pre-petition liens of the Stalking Horse Bidder, if any, the balance due on its pre-petition secured claims, upon all or any portion of the Purchased Assets constituting collateral of the Stalking Horse Bidder (the "Credit Bid"). The Stalking Horse Bidder's right to effect the Credit Bid in connection with the bid reflected in the APA or any subsequent bid of the Stalking Horse Purchaser is hereby authorized under section 363(k) of the

Bankruptcy Court and such right shall be absolute and shall not be impaired, hindered, precluded, or prohibited by any party, notwithstanding anything to the contrary in this Sale Procedures Order, the Bidding Procedures, or the APA.

15. The Stalking Horse Bidder shall be deemed a party in interest with standing to appear and be heard in connection with any motion, hearing or other proceeding relating to the APA, any sale of the Purchased Assets or any Qualified Bid.

### Notice Procedures

16. Within five (5) business days of entry of this Order, the Debtors (or its agent) shall serve a notice of the Sale, substantially in the form attached to the Motion as <u>Exhibit B</u>, upon (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Stalking Horse Bidder; (iii) all entities known to have asserted any lien, claim, encumbrance, right of refusal or other property interest in or upon the Purchased Assets; (iv) counsel for the official committee of unsecured creditors (the "<u>Committee</u>"); (v) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (vi) all parties that have expressed a bona fide interest in acquiring the Purchased Assets; (vii) the United States Attorney's Office; (viii) all entities who have filed a notice of appearance and request for service of papers in these cases; and (ix) the applicable state and federal regulatory authorities.

17. On or before ten days prior to the Sale Hearing, the Debtors shall cause notice of the Sale to be published once in the national edition of *The Wall Street Journal* substantially in the form attached to the Motion as <u>Exhibit C</u>, and such publication shall be deemed proper notice to any other interested parties whose identities are unknown to the Debtors.

18. The foregoing notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those persons most interested in this case and those persons potentially interested in bidding on the Purchased Assets and, thus, such notice is sufficient for entry of an order or orders granting all of the relief requested in the Motion. Good cause exists to shorten the applicable notice periods in Bankruptcy Rules 2002, 6004, and 6006 and the applicable notice periods in the Local Rules, and no other or further notice of the Motion, the Sale Hearing, or the Sale (including the assumption and assignment of any Contracts that are Purchased Assets), is or shall be required.

## Assumption and Assignment Procedures

19. Within five (5) business days after the entry of this Sale Procedures Order, the Debtors shall file with the Court and serve on all Counterparties to Contracts (as defined in the APA) notices that the Debtors will assume and assign certain Contracts (as defined in the APA), including without limitation Customer Contracts, Broker Contracts and Other Assumed Contracts (as defined in the APA), in connection with the sale of the Purchased Assets (the "Assumption and Assignment Notice," substantially in the form attached to the Motion as Exhibit D). The Assumption and Assignment Notice shall identify (i) either specifically or generally, the Contracts (as such term is defined in the Motion) proposed to be assumed and assigned, (ii) the name of the Counterparties to such Contracts, (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default under such Contract in accordance with section 365(b) and (f)(2) of the Bankruptcy Code (the "Cure Amount"), and (iv) the deadline by which any Counterparty to such Contracts must file an objection to the proposed assumption and assignment of such Contract, including, without limitation, as to the applicable Cure Amount and the ability of the Stalking Horse Bidder to

provide adequate future performance under the applicable Contract within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

20. Within five (5) business days after the entry of this Sale Procedures Order or as soon thereafter as practicable, the Debtors will file an alphabetized list of the counterparties to the Contracts who received the Assumption and Assignment Notice, and the proposed Cure Amount for each Contract (the "Cure List"), and serve the Cure List upon (i) counsel to the Stalking Horse Bidder, (ii) the U.S. Trustee, (iii) counsel to the Committee and (iv) any persons who have filed a request for notice in the above captioned chapter 11 cases pursuant to Local Rule 2002-1. The Stalking Horse Bidders and the Debtors are permitted to supplement or modify the Cure List up to five (5) days prior to the Sale Hearing; provided, however, that the Debtors shall provide an additional Assumption and Assignment Notice to the applicable counterparties of any such Contract which is the subject of a supplement or modification, and such counterparty shall have an opportunity to object to such addition or modification.

21. Counterparties who believe that (i) defaults exist under their respective Contracts that have not been identified in their Assumption and Assignment Notices and (ii) they are owed amounts in addition to the defaults identified in the Assumption and Assignment Notices are required to object to the proposed Cure Amount ("Cure Amount Objection"). Any Cure Amount Objection must (i) be in writing, (ii) comply with the Bankruptcy Rules and Local Rules, (iii) set forth the basis for the objection as well as any cure amount that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iv) filed with the Clerk of the Court, Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801, and served upon (a) lead counsel to the Debtors, Patton Boggs LLP 2550 M Street N.W., Washington, D.C. 20037, Attention: Alan M. Noskow, Esq. and Mark A. Salzberg, Esq.; (b) Delaware co-counsel to the Debtors, Young Conaway

01:15315393.5

Stargatt & Taylor LLP, 1000 North King Street, Wilmington, Delaware 19801, Attention: Michael N. Nestor, Esq. and Joseph M. Barry, Esq.; (c) co-counsel to the Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon Levine, Esq. and Philip J. Gross, Esq.; (d) Delaware co-counsel to the Committee, The Rosner Law Group LLC, Attention: Frederick B. Rosner, Esq. and Julia B. Klein, Esq.; (e) lead counsel to the Stalking Horse Bidder, Cadwalader, Wickersham & Taft LLP, 700 Sixth Street, N.W., Washington, D.C. 20001, Attention: Kenneth Irvin, Esq. and Karen Dewis, Esq.; (f) Delaware co-counsel to the Stalking Horse Bidder, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attention: Jason M. Madron, Esq.; (g) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; and (h) any persons who have filed a request for notice in the above captioned chapter 11 cases pursuant to Local Rule 2002-1 **so as to be <u>actually received</u> by no later than 4:00 p.m. EST on May 29, 2014 (the "<u>Cure Objection Deadline</u>")**.

22. To the extent that any Counterparty does not timely object as set forth above, such Counterparty shall be (i) forever barred and estopped from (a) objecting to the assumption and assignment of the Contracts identified in the Cure List, other than objecting to the ability of a Successful Bidder other than the Stalking Horse Bidder to provide adequate assurance of future performance under the Contracts within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, (b) asserting that any conditions to the assumption and assignment of any Contract must be satisfied under such Contract before such Contract may be assumed and assigned, or that any consent required to any such assignment has not been given, or (c) asserting that the Stalking Horse Bidder has failed to provide adequate assurance of future performance as contemplated under section 365(b)(1)(C) of the Bankruptcy Code in respect of any such Contract, (ii) deemed to have consented to the applicable Cure Amount, if any, and be bound to

such corresponding Cure Amount, (iii) deemed to have agreed that all defaults under the applicable Contract arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the neither the Stalking Horse Bidder nor the Debtors have any liability or obligation with respect to any default occurring or continuing prior to the assignment, and that the applicable Contract shall remain in full force and effect for the benefit of the Successful Bidder (and such Counterparty) in accordance with the terms of the Contract from and after the date of the assignment of the applicable Contract, (iv) deemed to have waived any right to terminate the applicable Contract or designate an early termination date under the applicable Contract as a result of any default that occurred and/or was continuing prior to the assignment date, and (v) deemed to have agreed to the terms of the order approving the Motion (the "Sale Order") shall apply to the assumption and assignment of the applicable Contract.

23. Any request for adequate assurance information regarding the Stalking Horse Bidder (a "Request for Adequate Assurance Regarding Stalking Horse Bidder") or the Successful Bidder, in the event that the Successful Bidder is not the Stalking Horse Bidder (a "Request for Adequate Assurance Regarding Successful Bidder"), must include an email address, postal address, and/or facsimile number to which a response to such request will be sent. Upon receiving a Request for Adequate Assurance Regarding Stalking Horse Bidder or the Request for Adequate Assurance Regarding Successful Bidder, the Debtors shall promptly provide such party with any non-confidential information reasonably related to adequate assurance by email, facsimile or overnight delivery, and the Stalking Horse Bidder or Successful Bidder, as applicable, shall promptly cooperate with the Debtors with respect to the provision of such non-confidential information.

24. If a Cure Amount Objection is timely received and such Cure Amount Objection cannot otherwise be resolved by the parties, the Court may hear such Cure Amount Objection at the Sale Hearing, if the Assumption and Assignment Notice is served at least five (5) days prior thereto, or any later date set by the Court. The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Contract.

### Objection Procedures

25. All other objections to approval of the sale of the Purchased Assets to the Successful Bidder (in the event the Stalking Horse Bidder is not the Successful Bidder), including any objection to the ability of the Successful Bidder to provide adequate assurance of future performance under a Contract within the meaning of section 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code, shall (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) set forth the name of the objector, (iv) state with particularity the legal and factual bases for such objection, and (v) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service thereof, and served upon the following parties **so as to be actually received no later than 4:00 p.m. (EST) on May 29, 2014** (the "General Objection Deadline"): (a) lead counsel to the Debtors, Patton Boggs LLP, 2550 M Street N.W., Washington, D.C. 20037, Attention: Alan Noskow, Esq. and Mark Salzberg, Esq.; (b) Delaware co-counsel to the Debtors, Young Conaway Stargatt & Taylor LLP, 1000 North King Street, Wilmington, Delaware 19801, Attention: Michael N. Nestor, Esq. and Joseph M. Barry, Esq.; (c) lead counsel to the Stalking Horse Bidder, Cadwalader, Wickersham & Taft LLP, 700 Sixth Street, N.W., Washington, D.C. 20001, Attention: Kenneth Irvin, Esq. and Karen Dewis, Esq.; (d) co-counsel to the Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon Levine, Esq. and Philip J. Gross, Esq.; (e)

Delaware co-counsel to the Committee, The Rosner Law Group LLC, Attention: Frederick B. Rosner, Esq. and Julia B. Klein, Esq.; (f) Delaware co-counsel to the Stalking Horse Bidder, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attention: Jason M. Madron, Esq.; (g) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; and (h) any persons who filed a notice in the above captioned chapter 11 cases pursuant to Local Rule 2002-1 on or before the General Objection Deadline. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of said adjournment in open court or on the Court's calendar on the date scheduled for said hearing or any adjourned date.

26. Failure of any entity to file an objection on or before the General Objection Deadline or the Cure Objection Deadline, as applicable, shall be deemed to constitute consent of such entity to the sale of the Purchased Assets to the Successful Bidder and other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Purchased Assets, the assumption and assignment of Contracts to the Successful Bidder, the ability of the Successful Bidder to provide adequate assurance of future performance within the meaning of section 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code, or the Debtors' consummation and performance of the terms of the APA or an applicable asset purchase and sale agreement entered into with the Successful Bidder, if authorized by the Court.

### Related Relief

27. The Debtors are hereby authorized and empowered to take such steps, expend such sums of money and do such other things as may be reasonably necessary to implement and effect the terms of this Sale Procedures Order.

28. Except as otherwise provided herein, and subject to the right of the Stalking Horse Bidder to Credit Bid, the Debtors (in consultation with the Stalking Horse Bidder and the Committee) reserve the right as they may determine in the reasonable exercise of their business judgment to be in the best interests of their estates, to: (i) determine which bidders are Potential Bidders or Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (iv) reject any bid that does not comply with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code; (v) remove certain of the Purchased Assets from the Auction; (vi) impose additional terms and conditions with respect to Potential Bidders; (vii) with the consent of the Stalking Horse Bidder, extend the deadlines set forth herein; (viii) consider Qualified Bids for subsets of the Purchased Assets; and (ix) modify the Bidding Procedures as the Debtors may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.

29. All objections to the entry of this Sale Procedures Order that have not been withdrawn, waived, or settled as announced to the Court at the Sale Procedures Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections, if any, are overruled in their entirety, except as otherwise set forth herein.

30. This Sale Procedures Order shall constitute findings of fact and conclusions of law and shall take effect upon execution hereof.

31. Notwithstanding the possible applicable of Bankruptcy Rules 6004(b), 6006, 7062, 9014, or otherwise, the terms and conditions of this Sale Procedures Order shall be immediately effective and enforceable upon its entry. The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Sale Procedures

Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Sale Procedures Order.

32.  The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the procedures contemplated by this Sale Procedures Order.

33.  This Court shall retain jurisdiction over any matters or disputes related to or arising from the implementation of this Sale Procedures Order, including, but not limited to, the right to amend this Sale Procedures Order.

34.  Nothing in this Order is intended, nor shall it be deemed, to preclude any exercise of the authority and jurisdiction of the NHPUC with respect to any law concerning the regulation of the business to be conducted by the Buyer, or the adjudication of any dispute concerning any Customer Contracts (as defined in the APA), including any dispute over conduct of the Debtors during the six (6) months prior to the Closing Date.  Furthermore, nothing herein is intended nor may it be deemed to mean that the NHPUC is precluded from ordering rescission, refunds, or the assessment of penalties provided for in New Hampshire law, against the Buyer or against any Debtor (up to the amount of any financial security instrument provided by a Debtor for the benefit of the NHPUC) to address such pre-Closing disputes.  The exceptions in this paragraph shall apply to assumed and assigned New Hampshire Customer Contracts (as defined in the APA) regardless of whether the Customer (as defined in the APA) claimed an entitlement to a cure of default or objected to the assumption and assignment.

35. To the extent that this Sale Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Sale Procedures Order shall govern.

Dated: May 14, 2014
Wilmington, Delaware

_____
Christopher S. Sontchi
United States Bankruptcy Judge