## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
                                        :
In re                                   :
                                        :   Chapter 11
GRIDWAY ENERGY HOLDINGS, INC., et al.,  :
                                        :   Case No. 14-10833 (CSS)
            Debtors.¹                    :
                                        :   Jointly Administered
                                        :
                                        :   Hearing Date: December 19, 2014 at 2:00 p.m. ET
                                        :   Objection Deadline: December 12, 2014 at 4:00 p.m. ET
                                        :
-----------------------------------------------------------x
```

### DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006 (I) AUTHORIZING SALE OF THE ASSETS OF ZIPHANY, LLC, PURSUANT TO THE ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) APPROVING THE ASSET PURCHASE AGREEMENT; (III) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; (IV) PROVIDING FOR THE PAYMENT OF THE SALE PROCEEDS IN ACCORDANCE WITH ORDER APPROVING THE GLOBAL SETTLEMENT; AND (V) GRANTING RELATED RELIEF

Gridway Energy Holdings, Inc. and its above-captioned title 11 subsidiaries and affiliates, as chapter 11 debtors and debtors in possession (collectively the "Debtors"), hereby submit this motion (the "Motion") seeking the entry of an order (the "Ziphany Sale Order") pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Gridway Energy Holdings, Inc. (5072); Glacial Energy Holdings (3292); Glacial Energy, Inc. (1189); Glacial Energy of New York (0776); Glacial Energy of New England, Inc. (1724); Glacial Energy of Maryland, Inc. (7173); Glacial Energy of California, Inc. (1795 ); Glacial Energy of Illinois, Inc. (1796); Glacial Energy of New Jersey, Inc. (8671); Glacial Energy of Pennsylvania, Inc. (9762); Glacial Energy of Texas (1517); Glacial Energy of Washington DC, Inc. (5548); Glacial Energy of Ohio, Inc. (0103); Glacial Energy of Michigan, Inc. (7110); Glacial Natural Gas, Inc. (0165); Negawatt Business Solutions (6299); Negawatt Business Solutions, Inc. (f/k/a/ Gridway Energy Partners, Inc.) (7086); Ziphany, L.L.C. (7934); and Glacial Energy VI, LLC (1142). The location of the headquarters of Glacial Energy VI, LLC is 5326 Yacht Haven Grande, Box 36, St. Thomas, VI 00802. The location of the headquarters for the remaining Debtors is 24 Massachusetts 6A, Sandwich, MA 02563.

Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing and approving the sale ("Ziphany Sale") of substantially all of the assets of Ziphany, LLC ("Ziphany"or the "Seller")[2] to the prevailing bidder (the "Prevailing Bidder") free and clear of all liens and claims, at the conclusion of the marketing and sale process as more fully described herein, free and clear of all liens and claims, (ii) authorizing and approving the proposed asset purchase agreement (the "APA"), attached hereto as Exhibit 1 to the Ziphany Sale Order, (iii) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto, (iv) providing for the payment of sale proceeds in accordance with the order approving the Global Settlement, and (v) granting related relief.  In support of the Motion, the Debtors respectfully represent the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, along with Bankruptcy Rules 6004 and 6006.

---

[2]   Ziphany is a Buffalo, New York-based technology, software and service provider in the demand response industry and has been delivering demand response solutions to a broad range of demand response related companies since 2001.  Ziphany's demand response  technology platform is a white-label product that has been used by over 25 aggregators, utilities and curtailment service providers throughout the U.S. and Canada.  The Ziphany platform has several notable features, including (i) an advanced monitoring module, (ii) demand response support, (iii) automation, and (iv) notifications.  The platform offers a customer facing web portal, as well as a robust back-end database that is flexible for use in any market.  The demand response portion of the platform enables customers to manage all aspects of the programs from enrollment to settlement.

## BACKGROUND

2.      On April 10, 2014 (the "Commencement Date"), each of the Debtors commenced a voluntary case under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by Bankruptcy Code sections 1107(a) and 1108.

3.      By notice dated April 24, 2014, the Office of the United States Trustee for Region III (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").  On the Commencement Date, the Debtors filed a motion [D.I. 9] (the "DIP Financing Motion") for approval of debtor-in-possession financing from the Debtors' prepetition secured lender, Vantage Commodities Financial Services I, LLC ("Vantage"), in the aggregate principal amount of up to $122 million (the "DIP Financing").  Also on the Commencement Date, the Debtors filed a motion seeking approval of certain sales procedures and related relief [D.I. 13] (the "Initial Sale Motion").  Pursuant to the Initial Sale Motion, the Debtors proposed to sell substantially all of their assets to Vantage, as the stalking-horse bidder, pursuant to a credit bid up to the amount of the DIP Financing, or to such other purchaser who submits a higher and better offer pursuant to the sale-and-bidding procedures proposed in the Initial Sale Motion.

4.      Information regarding the Debtors' history and business operations, their capital structure and primary secured indebtedness, and the events leading up to the commencement of these chapter 11 cases (the "Chapter 11 Cases") can be found in the Declaration of Randy Lennan in Support of Chapter 11 Petitions and First Day Motions [D.I. 10] (the "First Day Declaration"), which is incorporated herein by reference.  No trustee or examiner has been appointed in these Chapter 11 Cases.

01:16342453.5

## RELEVANT BACKGROUND

5.    On May 12, 2014, following extensive negotiations between the Debtors, the Committee, Vantage, and EDF Trading North America LLC ("EDFT"), the parties reached a global settlement (the "Global Settlement") on the terms and conditions set forth in the *Joint Motion of the Debtors, Official Committee of Unsecured Creditors, Vantage Commodities Financial Services I, LLC and EDF Trading North America LLC for Entry of an Order Approving Settlement and Compromise Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019* [D. I. 270] (the "Global Settlement Motion") that resolved, among other things, issues in connection with the DIP Financing Motion and the Initial Sale Motion.  Pursuant to the terms of the Global Settlement, the assets of Ziphany and Negawatt Business Solutions, Inc. ("NBS") were excluded from the proposed asset sale.   On May 30, 2014, the Debtors and the Committee jointly filed the Global Settlement Motion seeking Court approval of the terms of the Global Settlement.  On June 19, 2014, the Court entered an order [D.I. 381] (the "Global Settlement Order") approving the Global Settlement.

6.    On May 14, 2014, the Court entered an order [D.I. 191] (the "Bidding Procedures Order") that, among other things, approved bidding procedures for the sale of substantially all of the Debtors' assets (excluding the assets of Ziphany and NBS) (the "Initial Sale").  On June 10, 2014, in accordance with the Bidding Procedures Order, the Debtors commenced an auction.  At the conclusion of the auction on June 11, 2014, the Debtors selected Platinum Partners Value Arbitrage Fund LP ("Platinum") as the Successful Bidder (as defined in the Bidding Procedures Order).  On June 17, 2014, the Court entered an order [D.I. 377] (the "Initial Sale Order") approving the Sale to Platinum pursuant to the Asset Purchase Agreement attached thereto.  The Economic Closing (as defined in the Initial Sale Order) of the Initial Sale

occurred on June 18, 2014, in accordance with the terms of the Initial Sale Order.  As of the date

hereof, the Debtors and Platinum are still performing certain critical tasks related to the Asset

Transfer Closing Date (as defined in the Initial Sale Order), which has yet to occur.

   7. As stated previously, pursuant to the Global Settlement Order, the assets

of Ziphany (to the extent sold pursuant to the Ziphany Sale Order, the "Ziphany Assets") were

excluded from the Initial Sale and are to be sold as part of a separate sale process pursuant to

section 363 of the Bankruptcy Code, with the proceeds to be distributed in accordance with the

terms of the Global Settlement.   The Global Settlement, in relevant part, provides that:

  a) If the Secondary Sale Net Proceeds[3] are less than $300,000 then Vantage will (i) permit the Secondary Sale Net Proceeds (if any) to be deposited into the Settlement Fund (at which point Vantage's liens in the deposited Secondary Sale Net Proceeds will be deemed released) and (ii) fund to the Settlement Fund an amount equal to (x) $300,000 minus (y) the Secondary Sale Net Proceeds (if any);

  b) If the Secondary Sale Net Proceeds total between $300,000 and $500,000, Vantage will permit the Secondary Sale Net Proceeds to be deposited into the Settlement Fund (at which point Vantage's liens in the deposited Secondary Sale Net Proceeds will be deemed released);

  c) If the Secondary Sale Net Proceeds total between $500,001 and $1,000,000, Vantage will permit $500,000 of the Secondary Sale Net Proceeds to be deposited into the Settlement Fund (at which point Vantage's liens in the deposited Secondary Sale Net Proceeds will be deemed released), and Vantage will receive the remainder of the Secondary Sale Net Proceeds; and

  d) If the Secondary Sale Net Proceeds are greater than $1,000,000, Vantage will permit (i) $500,000 of the Secondary Sale Net Proceeds plus (ii) 50% of the Secondary Sale Net Proceeds greater than $1,000,000 to be deposited into the Settlement Fund (at which point Vantage's liens in the Secondary Sale Net Proceeds will be deemed released), and Vantage will receive the remainder of the Secondary Sale Net Proceeds.

---

[3]   The Global Settlement defines the Secondary Sale as a separate sale process pursuant to section 363 of the Bankruptcy Code pursuant to which the Ziphany Assets and the assets of NBS are sold, and it defines the Secondary Sale Net Proceeds as the net proceeds of the Secondary Sale.  See Global Settlement Order, Exhbit A.

8.      Since Vantage was not the ultimate purchaser in the Initial Sale, pursuant to the Global Settlement, if and to the extent that the Secondary Sale does not result in the closing of the sale of the Ziphany Assets, the Ziphany Assets may be sold to Vantage without any additional consideration payable by Vantage.

9.      After a subsequent review of the relevant financial data and discussions between the Debtors, the Committee, Vantage and EDFT (collectively, the "Parties"), the Parties agreed that given NBS' negative cash flow and nature of its assets, that the time and expense associated with the sale of its assets was not justified.  Accordingly, the Debtors have begun a wind down of NBS in order to preserve estate assets.

10.     With respect to Ziphany, after a review of the relevant financial data, the Parties agreed that the time and expense associated with the sale of the Ziphany Assets was justified as long as the sale process was conducted efficiently.  As a result, the Parties entered into a letter agreement, dated August 6, 2014 (the "Sale Process Letter"), attached hereto as **Exhibit A**, pursuant to which the Parties agreed to wind down the NBS estate rather than sell the assets and agreed to a process by which to market and sell the Ziphany Assets.  Consistent with the agreement, the Parties have agreed that EDFT shall market the Ziphany Assets at no cost to the estates and with bids to be submitted on or before December 12, 2014.[4]  To the extent that Qualifying Bids (as defined below) are received by the Bid Deadline (as defined below), the Debtors will conduct a telephonic auction on December 16, 2014 at 10:30 a.m. (ET).  To the extent that there is a Prevailing Bidder at the auction, a hearing to consider the Ziphany Sale will be held on December 19, 2014 at 2:00 p.m. (ET).  The Parties believe that the aforementioned timetable, utilizing the below described marketing and sale process, is the most expeditious and

---

[4]  As permitted under the Sale Process Letter, the Parties agreed to modify certain dates contemplated therein to allow the finalization of the Wind Down Settlement.

cost effective manner to sell the Ziphany Assets, thus maximizing the value of the Ziphany Assets.

<u>**MARKETING AND SALE PROCESS**</u>

11.     Upon entry of the Global Settlement Order, beginning in June 2014, EDFT, in consultation with the Parties, began the marketing process for the Ziphany Assets in what the Parties agreed were commercially reasonable steps which included, but were not limited to (i) issuing a press release regarding the sale of the Ziphany Assets in certain energy publications and (ii) contacting, via either electronic mail or other means, those parties that expressed an interest in the Debtors' assets previously sold in these Chapter 11 Cases.  In addition, contemporaneously herewith, the Debtors will serve a copy of the attached Sale Notice (defined below) any parties that either expressed an interest in the Debtors' assets previously sold in these Chapter 11 Cases or that has expressed an interest in the Ziphany Assets within the past year.

12.     To the extent that any party expresses an interest in conducting diligence on the Ziphany Assets on or before the Bid Deadline, the below bidding procedures (the "<u>Bidding Procedures</u>") shall be implemented:

**A.**     <u>**Bidding Procedures**</u>

(a)     <u>**Qualification as Bidder**</u>:  Any person or entity that wishes to participate in the bidding process for the Ziphany Assets (each, a "<u>Potential Bidder</u>") must first become a "<u>Qualifying Bidder</u>."  As a prerequisite to becoming a Qualifying Bidder (and thus being able to conduct due diligence), a Potential Bidder must: (i) deliver an executed confidentiality agreement in form and substance acceptable to EDFT and the Debtors; and (ii) be able, as determined by EDFT, the Debtors and the Committee, to (A) demonstrate the financial wherewithal to close the Ziphany Sale if selected as the Prevailing Bidder and (B) provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Seller and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

01:16342453.5

(b)     **Due Diligence**:  EDFT and the Debtors may afford to any Qualifying Bidder reasonable due diligence access and the time and opportunity to conduct reasonable due diligence.  The due diligence period shall extend through and including the Bid Deadline.  EDFT and the Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline.

For any Qualifying Bidder which is a competitor of the Debtors, or is affiliated with any competitor of the Debtors, EDFT and the Debtors reserve the right, in their sole discretion, to withhold or limit access to any due diligence information that either EDFT or the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to such Qualifying Bidder.  Notwithstanding any limitations provided for in such information, including, without limitation, any non-disclosure, confidentiality or similar provisions, EDFT, and the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to EDFT and the Debtors.  EDFT, and the Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Ziphany Sale.

Each Qualifying Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all due diligence regarding the Ziphany Assets; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Ziphany Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Ziphany Sale.

(c)     **Bid Requirements**:

    i.     *Qualifying Bid*.  To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "Bid Requirement"):

      a.     be in writing;

      b.     fully disclose the identity of the Qualifying Bidder;

      c.     set forth the purchase price to be paid by such Qualifying Bidder;

      d.     not propose payment in any form other than cash;

      e.     state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

f.      state that such Qualifying Bidder offers to purchase the Ziphany Assets upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, set forth in the APA;

g.      be accompanied by a clean and duly executed asset purchase agreement (a "Modified APA") and marked copy of the Modified APA that reflects any variations from the APA;

h.      state that such Qualifying Bidder's offer is irrevocable until two (2) business days after the closing of the Ziphany Sale;

i.      state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Modified APA and provide written evidence in support thereof;

j.      contain such financial and other information to allow EDFT, the Debtors, and the Committee, to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the Modified APA, including, without limitation, such financial and other information providing adequate assurance of future performance under any executory contracts and unexpired leases to be assumed pursuant to section 365 of the Bankruptcy Code, in a form requested by EDFT and the Debtors, in their sole discretion;

k.      identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the Modified APA;

l.      make a commitment to close the transactions contemplated by the Modified APA on or before December 31, 2014;

m.      not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

n.      not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

o.      contain written evidence satisfactory to EDFT, the Debtors and the Committee, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Modified APA, with appropriate contact information for such financing sources;

p.    provides for the Qualifying Bidder to serve as a Prevailing Bidder if the Qualifying Bidder's bid is the next highest and best bid after the Prevailing Bid (the "Second-Highest Bid"), in accordance with the terms of the Modified APA;

q.    includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Modified APA; and

r.    provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Modified APA equal to the amount of the Deposit.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by EDFT and the Debtors, in consultation with the Committee, shall constitute a Qualifying Bid. EDFT and the Debtors, in their discretion and in consultation with the Committee, may waive or modify any of the requirements for the determination of a Qualifying Bid.

ii.    *Bid Deadline*. A Qualifying Bidder that desires to make a bid shall deliver a written or electronic copy of its bid to (a) counsel for Vantage and EDFT, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY, 10281, Attn: Ingrid Bagby and David E. Kronenberg, (b) Ziphany, LLC, 410 Main Street, Buffalo, NY 14202, Attn: Chip Cummins, (c) lead counsel to the Debtors, Squire Patton Boggs (US) LLP, 2550 M. Street NW, Washington, DC 20037, Attn: Alan M. Noskow and Mark A. Salzberg, (d) local counsel for the Debtors, Young, Conaway, Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Joseph M. Barry and Donald J. Bowman, Jr., and (e) counsel to the Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Sharon Levine and Philip J. Gross, in each case so as to be received on or before **December 12, 2014 at 4:00 p.m. (ET)** (the "Bid Deadline").

iii.    *Evaluation of Qualifying Bids*. EDFT and the Debtors, in consultation with the Committee, shall make the determination regarding whether a bid from a Qualifying Bidder is a Qualifying Bid, and EDFT and/or the Debtors shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than 10:00 a.m. (ET) on December 15, 2014. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by EDFT and/or the Debtors and shall have until 4:00 p.m. ET on December 15, 2014 to modify its bid.

At or prior to the Auction, EDFT and the Debtors, in consultation with the Committee, shall determine which of the Qualifying Bids, at such time, is

the highest or best bid for purposes of constituting the opening bid of the Auction (the "Baseline Auction Bid"), and shall promptly notify the Qualifying Bidders with Qualifying Bids of the Baseline Auction Bid.

(d)     **No Qualifying Bids**:  If no Qualifying Bids for the Ziphany Assets are received by the Bid Deadline or any extension thereof by the Debtors and EDFT (in consultation with the Committee), then as set forth in the Global Settlement, the Debtors shall seek entry of an order authorizing and approving the sale of the Ziphany Assets to Vantage on terms substantially similar to the terms set forth in the APA and without any additional consideration payable by Vantage (other than the $300,000 to be paid by Vantage to the Settlement Fund in such an instance, as set forth in the Global Settlement).

(e)     **One Qualifying Bid**.  If there is not more than one (1) Qualifying Bid, then the party submitting that bid shall be deemed the Prevailing Bidder and that Prevailing Bidder shall submit a deposit in the amount of 5% of the bid within two (2) business of Bid Deadline.

(f)     **Auction**:  In the event that one or more Qualifying Bids are received, and the second highest bid is either (i) within $100,000 of the highest bid, or (ii) reasonably comparable to, yet lower than, the highest bid on an estimated present value basis, then EDFT, in consultation with the Debtors and the Committee, shall conduct a telephonic auction (the "Auction") to be held on **December 16, 2014 at 10:30 a.m. (ET)**.  The bidding rules with respect to the Auction, if any, shall be determined by EDFT, in consultation with the Debtors and the Committee, prior to the Auction.  At the conclusion of the Auction, EDFT and the Debtors, in consultation with the Committee, shall select the Prevailing Bid and the Second-Highest Bid.

(g)     **Ziphany Sale Hearing**:  The Prevailing Bid and any Second-Highest Bid will be subject to approval by the Bankruptcy Court.  The Ziphany Sale Hearing to approve the Prevailing Bid and any Second-Highest Bid shall take place **on December 19, 2014, at 2:00 p.m. (ET)**.  The Ziphany Sale Hearing may be adjourned by the Debtors, in consultation with EDFT and the Committee, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Ziphany Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

(h)     **Return of Deposits**:  All deposits, to the extent received, shall be returned to each bidder not selected by EDFT and the Debtors as the Prevailing Bidder no later than five (5) business days following the closing of the Ziphany Sale; the deposit of the Prevailing Bidder or, if the Ziphany Sale is closed with the Second-Highest Bidder, the deposit of the Second-Highest Bidder, shall be applied to the purchase price for the Ziphany Sale.  If the Prevailing Bidder fails to consummate the Ziphany Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the APA or the Modified APA, as applicable, the

Debtors and their estates shall be entitled to retain the deposit of the Prevailing Bidder as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

(i)    **Reservation of Rights**.  Notwithstanding any of the foregoing, EDFT and the Debtors, in consultation with the Committee, reserve the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction.

(j)    **Second-Highest Bidder**:  Notwithstanding any of the foregoing, in the event that the Prevailing Bidder fails to close the Ziphany Sale on or before December 31, 2014 (or such date as may be extended by the Debtors), the Second-Highest Bid will be deemed to be the Prevailing Bid, the Second-Highest Bidder will be deemed to be the Prevailing Bidder, and the Debtors will be authorized, but not directed, to close the Ziphany Sale to the Second-Highest Bidder subject to the terms of the Second-Highest Bid without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties.

13.    The above described Bidding Procedures were developed in light of the prior marketing efforts and consistent with the Debtors' competing needs to conduct an expedited sale process in accordance with the Global Settlement Order and the order approving the wind down term sheet [D.I. 646] (the "Wind Down Order") and to promote participation and active bidding.  The Bidding Procedures reflect an agreement between the Parties for soliciting bids and conducting the Auction in an efficient, but fair and open, manner, while ensuring that the highest or best bid is generated for the Ziphany Assets.

**B.    Notice of the Bid Deadline and Ziphany Sale Hearing**

14.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty-one (21) days-notice of the Ziphany Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Ziphany Sale Hearing and the deadline for filing any objections to the relief requested in the Motion. Accordingly, contemporaneously herewith, the Debtors will serve a sale notice (the "Sale

Notice"), substantially in the form attached hereto as Exhibit B, via first class mail, postage

prepaid, upon:  (i) the Office of the United States Trustee for the District of Delaware; (ii)

counsel to the Debtors' prepetition secured lenders; (iii) Ziphany's known creditors; (iv) all

counterparties to the Assumed Contracts; (v) all entities with recorded claims, liens, interests or

encumbrances against the Ziphany's  right, title and interest in the Ziphany Assets and any other

entities reasonably known to have asserted any such claim, liens, interests or encumbrances; (vi)

all entities reasonably known to have expressed an interest in a transaction with respect to the

Ziphany Assets during the past year or that expressed an interest in the Debtors' assets

previously sold in these Chapter 11 Cases; (vii) the Internal Revenue Service; (viii) the Office of

the United States Attorney for the District of Delaware; (ix) the United States Securities and

Exchange Commission; (x) all taxing authorities or recording offices with a reasonably known

interest in the relief requested in this Motion; and (xi) all parties requesting notice in these

chapter 11 cases pursuant to Local Rule 2002-1(b) as of the date thereof.   The Sale Notice shall

also identify December 12, 2014 at 4:00 p.m. (ET) (the "Ziphany Sale Objection Deadline") as

the deadline for objecting to the Ziphany Sale.

15.     The Debtors submit that the foregoing notice procedures satisfy

Bankruptcy Rule 2002 and Local Rule 2002-1(b) and provide adequate and sufficient notice of

the Sale and related deadlines, including, without limitation, the Bid Deadline and the Ziphany

Sale Objection Deadline.

**C.     Notice of Assumption and Assignment**

16.     To facilitate and consummate the Ziphany Sale, the Debtors, also seek

authority to assume and assign certain Contracts (as defined in the APA) to the Prevailing Bidder

(or Second-Highest Bidder).   Due to the nature of the bidding process, it is impossible for the

Debtors to currently identify which Contracts will require assignment and assumption to the

Successful Bidder.  Therefore, the Debtors, contemporaneously herewith shall serve a notice of

assumption and assignment (the "Assumption Notice"), substantially in the form attached hereto

as Exhibit C, on each counterparty (each a "Counterparty" and collectively, the

"Counterparties") to an Assumed Contract (as identified in the APA).

   17. The Assumption Notice shall include, without limitation, the cure amount

(each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable

Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the

Assumed Contracts.  If a Counterparty objects to the Cure Amount for its Assumed Contract, the

Counterparty must file with the Court and serve a written objection (a "Contract Objection") on:

(a) counsel for Vantage and EDFT, Cadwalader, Wickersham & Taft LLP, One World Financial

Center, New York, NY, 10281, Attn: Ingrid Bagby and David E. Kronenberg, (b) Ziphany, LLC,

410 Main Street, Buffalo, NY 14202, Attn: Chip Cummins, (c) lead counsel to the Debtors,

Squire Patton Boggs (US) LLP, 2550 M. Street NW, Washington, DC 20037, Attn:  Alan M.

Noskow and Mark A. Salzberg, (d) local counsel for the Debtors, Young, Conaway, Stargatt &

Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Joseph M. Barry and

Donald J. Bowman, Jr., and (e) counsel to the Committee, Lowenstein Sandler LLP, 65

Livingston Avenue, Roseland, NJ 07068, Attn: Sharon Levine and Philip J. Gross.

   18. Any Contract Objection shall:  (i) be in writing; (ii) comply with the

Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market

Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, **on or before 4:00 p.m.
(ET) on December 12, 2014** (the "Contract Objection Deadline"); (iv) be served, so as to be

actually received on or before the Contract Objection Deadline, upon the Contract Objection

Notice Parties (as defined below); and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

19.    If the Debtors subsequently determine that additional executory contracts or unexpired leases of the Seller are determined to be Assumed Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served within five (5) days of the Assumption Notice Deadline and (b) two (2) hours prior to the commencement of the Ziphany Sale Hearing in the event that such Assumption Notice was filed and served more than five (5) days after the Assumption Notice Deadline

20.    To the extent that any Counterparty does not timely object as set forth above, such Counterparty shall be (i) forever barred and estopped from (a) objecting to the assumption and assignment of the Assumed Contracts identified in the Assumption and Assignment Notice, other than objecting to the ability of the Prevailing Bidder (or Second-Highest Bidder) to provide adequate assurance of future performance under the Assumed Contracts within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, or (b) asserting that any conditions to the assumption and assignment of any Assumed Contract must be satisfied under such Assumed Contract before such Assumed Contract may be assumed and assigned, or that any consent required to any such assignment has not been given, (ii) deemed to have

consented to the applicable Cure Amount, if any, and be bound to such corresponding Cure

Amount, (iii) deemed to have agreed that all defaults under the applicable Assumed Contract

arising or continuing prior to the effective date of the assignment have been cured as a result or

precondition of the assignment, such that the Prevailing Bidder (or Second-Highest Bidder) or

the Debtors have no liability or obligation with respect to any default occurring or continuing

prior to the assignment, and from and after the date of the assignment of the applicable Assumed

Contract shall remain in full force and effect for the benefit of the Prevailing and such

Counterparty in accordance with its terms, (iv) deemed to have waived any right to terminate the

applicable Assumed Contract or designate an early termination date under the applicable

Assumed Contract as a result of any default that occurred and/or was continuing prior to the

assignment date, and (v) deemed to have agreed to the terms of the Sale Order.

If a Cure Amount Objection is timely received and such Cure Amount Objection cannot

otherwise be resolved by the parties, the Court may hear such Cure Amount Objection at the

Ziphany Sale Hearing.

D.    **The Asset Purchase Agreement**[5]

a.    **Purchase Price**.  TBD

b.    **Purchased Assets**.  As described more fully in the APA, "Purchased
Assets" under the APA includes collectively, all assets of Ziphany, including without
limitation:

(i)    all Intellectual Property, including all rights of the Seller in, to and
under any Intellectual Property Licenses in effect as of the Closing
to the extent transferable to the Buyer (the "Transferred IP
Licenses");

(ii)    all Information Technology and all other all furniture, fixtures,
equipment, machinery, tools, vehicles, supplies and other tangible

---

[5]  Any description or summary of the terms of the APA contained herein is qualified in its entirety by the APA.  To
the extent that there are any inconsistencies between the Motion and the APA, the APA shall govern. Capitalized
terms in this section, unless otherwise defined, shall have the meaning ascribed to them in the APA.

01:16342453.5

personal property;

(iii)    all Contracts listed on <u>Schedule 2.1(k)</u> of the APA, except to the extent that any Contract listed on Schedule 2.1(k) constitutes an Excluded Contract;

(iv)    originals, or where not available, copies, of all books and records of the Seller relating to the Purchased Assets listed above and/or the Assumed Liabilities, including, but not limited to, books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, customer complaints and inquiry files, research and development files, correspondence and filings with any Governmental Bodies, sales material and records (including pricing history, total sales, terms and conditions of sale, sales and pricing policies and practices), strategic plans, internal financial statements, marketing and promotional surveys, material and research and other files and information relating to the Purchased Assets listed above ("<u>Books and Records</u>"); and

(v)    all goodwill and all going concern value.

c.    **Assumed Liabilities**. TBD

d.    **Sale Free and Clear.** As set forth in Section 5.4 of the APA and the Sale Order, the sale of the Purchased Assets to the Prevailing Bidder shall be free and clear of any and all Liens.

e.    **Good Faith Deposit**. If there is not more than one (1) Qualifying Bid, then the party submitting that bid shall be deemed the Prevailing Bidder and that Prevailing Bidder shall submit a deposit in the amount of 5% of the bid within two (2) business of Bid Deadline

f.    **General Release**. The Debtors anticipate granting a release to the Buyer its affiliates and certain other parties in connection with the Ziphany Sale.

g.    **Records Retention**. The Purchased Assets include certain of the Seller's books and records. Under the terms of the APA, the Seller shall have reasonable access to the books and records to enable it to administer its bankruptcy case.

h.    **Requested Findings as to Successor Liability.** The Sale of the Purchased Assets is proposed to be free and clear of all liens, claims and encumbrances, including claims arising under doctrines of successor or transferee liability. Accordingly, the Prevailing Bidder (or Second-Highest Bidder) shall not be deemed to: (a) to be a legal successor, or otherwise be deemed a successor to the Debtors or any of their affiliates, (b) to

have, de facto or otherwise, merged with or into the Debtors, or (c) to be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors or their affiliates. Without limiting the foregoing, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, without limitation, under any theory of successor or transferee liability, de facto merger or continuity, environmental, tax, labor and employment, products, or antitrust liability, whether known or unknown as of the Closing Date (as defined in the APA), now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

i.      **Sale Proceeds.**  The sale proceeds shall be distributed as set forth in paragraph 7 above, and in accordance with the Global Settlement Order.

j.      **Relief from Bankruptcy Rules 6004(h) and 6006(d).**  The Debtors seek relief from the fourteen-day stays imposed by Bankruptcy Rules 6004(h) and 6006(d) for the reasons discussed below.

## RELIEF REQUESTED

21.     By this Motion, and to the extent that a Prevailing Bidder is identified pursuant to the process described above, the Debtors seek entry of the Ziphany Sale Order, substantially in the form attached hereto as Exhibit D:  (i) authorizing and approving the Ziphany Sale to the Prevailing Bidder, free and clear of all liens and claims; (ii) authorizing and approving the APA; (iii) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; (iv) providing for the payment of sale proceeds in accordance with the order approving the Global Settlement; and (v) granting related relief.

22.     To the extent that no Qualifying Bids for the Ziphany Assets are received by the Bid Deadline or any extension thereof by the Debtors and EDFT (in consultation with the Committee), then as set forth in the Global Settlement, the Debtors shall seek entry of an order authorizing and approving the sale of the Ziphany Assets to Vantage on terms substantially similar to the terms set forth in the APA and without any additional consideration payable by Vantage (other than the $300,000 to be paid by Vantage to the Settlement Fund in such an instance, as set forth in the Global Settlement).

23.     The Parties believe that the process as described above is the most efficient way to obtain the highest and best value for the Ziphany Assets, thereby maximizing the value of the Ziphany Assets for the benefit of the Debtors, their creditors and their stakeholders.

## BASIS FOR RELIEF REQUESTED

A.     **The Sale is Within the Sound Business Judgment of the Debtors and Should be Approved**

24.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors.  See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

25.     The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. Abbotts Dairies, 788 F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country

Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702,

704 (Bankr. E.D. Pa. 1989).  In this case, should a Prevailing Bidder be identified through the

above described process, the Debtors submit that the decision to proceed with the Sale is based

upon their sound business judgment and should be approved.  A debtor's showing of a sound

business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to

justify the proposed disposition with sound business reasons."  In re Baldwin United Corp., 43

B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or not there are sufficient business reasons to

justify a transaction depends upon the facts and circumstances of each case.  Lionel, 722 F.2d at

1071.

        26.     Additionally, section 105(a) of the Bankruptcy Code provides a

bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.

Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C.

§105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a

result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is

proper.  In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan

Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a

court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.

See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986)

("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant

to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R.

531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it

has a duty to protect whatever equities a debtor may have in property for the benefit of its

creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

27.     The Debtors submit that more than ample business justification exists to sell the Ziphany Assets to the Prevailing Bidder (or Second-Highest Bidder).  The Debtors believe that the sale process proposed herein is most likely to achieve the highest and best price for the Ziphany Assets.  Thus, the relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtors' estates for the benefit of their stakeholders.  Accordingly, the first prong of the Abbott Dairies standard is satisfied.

28.     The Sale Notice, is designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Ziphany Assets.  Accordingly, the Ziphany Sale satisfies the second prong of the Abbotts Dairies standard, as discussed below.

29.     Moreover, the Bidding Procedures are designed to maximize the value received for the Ziphany Assets.  Under the facts and circumstances of these Chapter 11 Cases, the process proposed herein and implemented by the Debtors allows for a timely and efficient auction process, while providing bidders and consultants with ample time and information to submit a timely bid.  The Bidding Procedures are designed to ensure that the Ziphany Assets will be sold for the highest or otherwise best possible purchase price.  The Debtors are subjecting the value of the Ziphany Assets to market testing and permitting prospective bidders to bid on the Ziphany Assets.  The Ziphany Sale will be further subject to a market check through the solicitation of competing bids in an auction process described in the Bidding Procedures. Therefore, the Debtors and all parties in interest can be assured that the consideration received for the Ziphany Assets will be fair and reasonable, and therefore, the third prong of the Abbotts

Dairies standard is satisfied.  As discussed below, the "good faith" prong of the Abbotts Dairies

standard is also satisfied here.

**B.**       **The Bidding Procedures are Reasonable and Appropriate**

30.       Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the

ordinary course of business may be by private sale or public auction.  The Debtors have

determined that the sale of the Ziphany Assets, pursuant to the Bidding Procedures and by public

auction (if necessary), will ensure that the bidding process with respect to the Ziphany Assets is

fair and reasonable and will yield the maximum value for their estates and creditors.

31.       The Debtors submit that under the facts and circumstances surrounding

their proposed sale of the Ziphany Assets and these Chapter 11 Cases generally, the Bidding

Procedures are reasonable and appropriate and necessary to their efforts to preserve and

maximize estate value.  The Bidding Procedures set a schedule for conducting the auction and

the Ziphany Sale Hearing.  As set forth above, the Debtors are in the process of winding down

the businesses and have a limited Wind Down Budget as set forth in the Wind Down Order.  As

the result of the Wind Down Budget the Debtors' have limited funds to administer these Chapter

11 Cases and to conduct the proposed marketing and sale process.  Consequently, an expedited

363 sale process that provides adequate time for marketing and soliciting bids is the best

mechanism to maximize value under the circumstances.

32.       The Parties reserve their right to modify such procedures as necessary or

they deem appropriate to maximize the value of Ziphany estate.  In addition, EDFT and Debtors,

in consultation with the Committee, reserve the right to withdraw any or all of the Ziphany

Assets from the Ziphany Sale at any time prior to Court approval of the Ziphany Sale.

**C.**      **The Proposed Notice of the Bidding Procedures is Appropriate**

33.      The Debtors believe that they will obtain the maximum recovery for their

creditors if the Ziphany Assets are sold expeditiously, through an auction and sale process, such

as the one provided for herein.  EDFT, in consultation with the Debtors, are in the process of

actively marketing the Ziphany Assets.  In doing so, the Debtors and EDFT have contacted, or

will be contacting numerous potential buyers and/or investors.  Against this backdrop, the

Debtors believe that their service of the Sale Notice, as previously described herein, is reasonable

and appropriate and satisfies any and all requirements for such notice under the Bankruptcy

Code, Bankruptcy Rules and Local Rules.

34.      Under Bankruptcy Rules 2002(a) and (c), the Debtors are required to

notify creditors of the proposed sale of the Debtors' assets, including a disclosure of the time and

place of an auction, the terms and conditions of a sale, and the deadline for filing any objections.

The Debtors respectfully submit that the notice procedures described herein, including, without

limitation, the service of the Sale Notice, satisfy Bankruptcy Rule 2002, and are reasonably

calculated to provide timely and adequate notice of the Sale to all parties in interest in these

Chapter 11 Cases, as well as to those parties that have expressed an interest, or may express an

interest, in bidding on the Ziphany Assets.  The period of time between when the marketing

process began in June 2014 and the Auction (if necessary) should give any and all interested

bidders more than enough time to participate in earnest in the auction and sale process proposed

herein.

**D.**      **The Sale of the Debtors' Assets Free and Clear of Liens**
          **and Other Interests is Authorized by Section 363(f)**

35.      Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may

sell all or any part of its property free and clear of any and all liens, claims, encumbrances, or

interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f); Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).   Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the assets "free and clear" of liens and interests.  See In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002)

36.    Because the Debtors expect that they will satisfy, at minimum, the second and fifth of these requirements, if not others as well, approving the Ziphany Sale free and clear of all adverse interests is warranted.  In particular, with respect to section 363(f)(2), each of the parties holding liens, claims, encumbrances, or other interests in the Ziphany Assets will consent, or absent any objection to this motion, will be deemed to have consented to, the Ziphany Sale. Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  See, e.g., In re Trans World Airlines, Inc., 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

E.      **Assumption and Assignment of Certain
        Executory Contracts and Unexpired Leases**

37.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a

debtor-in-possession "subject to the court's approval, may assume or reject any executory

contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). The standard governing

bankruptcy court approval of a debtor's decision to assume or reject an executory contract or

unexpired lease is whether the debtor's reasonable business judgment supports assumption or

rejection. See, e.g., In re Stable Mews Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). If

the debtor's business judgment has been reasonably exercised, a court should approve the

assumption or rejection of an unexpired lease or executory contract. See Group of Institutional

Investors v. Chicago M. St. P. & P.R.R. Co., 318 U.S. 523 (1943); Sharon Steel Corp., 872 F.2d

36, 39-40 (3d Cir. 1989). The business judgment test "requires only that the trustee [or debtor-

in-possession] demonstrate that [assumption or] rejection of the contract will benefit the estate."

Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel

Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting Stable Mews Assoc., 41 B.R. at 596).

Any more exacting scrutiny would slow the administration of a debtor's estate and increase

costs, interfere with the Bankruptcy Code's provision for private control of administration of the

estate, and threaten the court's ability to control a case impartially. See Richmond Leasing Co.

v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, pursuant to section

365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or

provide adequate assurance that the debtor will promptly cure," any default, including

compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

38.     Once an executory contract is assumed, the trustee or debtor-in-possession

may elect to assign such contract. See In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d

Cir. 2000) ("[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); see also In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist a trustee in realizing the full value of the debtor's assets).

     39.    Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. Accord In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtors has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

     40.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under title 11. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. See In re Fesco Plastics

Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R.

303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a) of the Bankruptcy Code, a court

may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  See,

e.g., In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of

the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy

Code"); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986)

(noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever

equities a debtor may have in property for the benefit of their creditors as long as that protection

is implemented in a manner consistent with the bankruptcy laws").

41.     The Debtors respectfully submit that the procedures for the assumption

and assignment of the Assumed Contracts are appropriate and reasonably tailored to provide

Counterparties to the Assumed Contracts with adequate notice of the proposed assumption and

assignment of their respective contracts, as well as proposed Cure Amounts, if any.  Such non-

Debtor parties to the Assumed Contracts will then be given an opportunity to object to such Cure

Amounts.  The procedures further provide that, in the event an objection is not resolved, the

Court will determine related disputed issues, including any adequate assurance of future

performance issues.  Accordingly, the Debtors submit that the procedures are appropriate under

the facts and circumstances of these cases and the proposed sale.

**F.      The Prevailing Bidder or Second-Highest Bidder Should Be Afforded All
         Protections Under Section 363(m) of the Bankruptcy Code as a Good Faith Buyer**

42.     The Debtors request the Court to find that the Prevailing Bidder is entitled

to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection

with the Sale.

43.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code thus protects the Prevailing Bidder of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets, such as the Ziphany Assets.

44.     The Debtors submit, and will present evidence at the Ziphany Sale Hearing if necessary that, as set forth above, the APA was an intensely negotiated, arms' length transaction, in which the Prevailing Bidder and its assignee, acted in good faith.  Accordingly, the Debtors will request that the Court to find that the Prevailing Bidder has purchased the Ziphany Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

**G.      Relief Under Bankruptcy Rules 6004(h)
          and 6006(d) is Appropriate**

45.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an order "authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Ziphany Sale Order be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

46.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See

Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay periods, Collier on Bankruptcy suggests that the fourteen-day stay periods should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev. ed.).  Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

47.     Promptly closing the Ziphany Sale is of critical importance.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

48.     Notice of this Motion will be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for Vantage/EDFT; (iii) counsel for the Committee; and (iv) all parties requesting notice pursuant to Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the Court to enter the orders, substantially in the form attached hereto granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated: November 28, 2014        YOUNG CONAWAY STARGATT &
      Wilmington, Delaware        TAYLOR, LLP

/s/    *Donald J. Bowman, Jr.*
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Donald J. Bowman (No. 4383)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302.571.6600
Facsimile:  302.571.1253

-and-

Alan M. Noskow (*pro hac vice* pending)
Mark A. Salzberg (*pro hac vice* pending)
PATTON BOGGS LLP
2550 M St. NW
Washington, DC 20037
Telephone:  202.457.6000
Facsimile:  202.457.6315

*Co-Attorneys for the Debtors and Debtors in Possession*