## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
                                                           :
In re                                                      :     Chapter 11
                                                           :
GRIDWAY ENERGY HOLDINGS, INC., *et al.*,[1]                :     Case No. 14-10833 (CSS)
                                                           :
        Debtors.                                           :     Jointly Administered
                                                           :
                                                           :
-----------------------------------------------------------x     **Ref. Docket No.: 664 & 736**

## ORDER PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006 (I) AUTHORIZING SALE OF THE ASSETS OF ZIPHANY, LLC PURSUANT TO ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) APPROVING THE ASSET PURCHASE AGREEMENT, (III) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; (IV) PROVIDING FOR THE PAYMENT OF THE SALE PROCEEDS IN ACCORDANCE WITH ORDER APPROVING THE GLOBAL SETTLEMENT, AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion"), of Gridway Energy Holdings,

Inc. and certain of its affiliated above-captioned debtors and debtors in possession (each a

"Debtor" and collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"),

pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy

Code"), rules 2002, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Gridway Energy Holdings, Inc. (5072); Glacial Energy Holdings (3292); Glacial Energy, Inc. (1189); Glacial Energy of New York (0776); Glacial Energy of New England, Inc. (1724); Glacial Energy of Maryland, Inc. (7173); Glacial Energy of California, Inc. (1795 ); Glacial Energy of Illinois, Inc. (1796); Glacial Energy of New Jersey, Inc. (8671); Glacial Energy of Pennsylvania, Inc. (9762); Glacial Energy of Texas (1517); Glacial Energy of Washington DC, Inc. (5548); Glacial Energy of Ohio, Inc. (0103); Glacial Energy of Michigan, Inc. (7110); Glacial Natural Gas, Inc. (0165); Negawatt Business Solutions (6299); Negawatt Business Solutions, Inc. (f/k/a/ Gridway Energy Partners, Inc.) (7086); Ziphany, L.L.C. (7934); and Glacial Energy VI, LLC (1142).  The location of the headquarters of Glacial Energy VI, LLC is 5326 Yacht Haven Grande, Box 36, St. Thomas, VI 00802. The location of the headquarters for the remaining Debtors is 24 Massachusetts 6A, Sandwich, MA 02563.

01:16344998.7

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order, among other things (i) authorizing and approving the sale (the "Ziphany Sale") of substantially all of the assets of Ziphany, LLC ("Ziphany" or the "Seller") (to the extent such assets constitute Purchased Assets, the "Ziphany Assets") to the prevailing bidder (the "Prevailing Bidder" or the "Buyer"), free and clear of all liens, claims, encumbrances and other interests (ii) authorizing and approving the proposed asset purchase agreement (the "APA"), attached hereto as Exhibit 1, (iii) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto, (iv) providing for the payment of sale proceeds in accordance with the order approving the Global Settlement, and (v) granting related relief,[2] and the Debtors having received a Qualifying Bid from JKMV Acq LLC who is the Buyer; and the Debtors having determined that the Buyer's bid was (and is) the Prevailing Bid (as such term is defined and described in the Motion); and the Declaration of Chip Cummins in Support of the Ziphany Sale [D.I. 736]; and the Court having reviewed the Motion and other related pleadings, including but not limited to all affidavits and declarations and having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion and at the Ziphany Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED, that:[3]**

---

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the APA, as applicable.

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### Jurisdiction and Venue

A.      This Court has jurisdiction over the Motion, the APA, the Ziphany Sale, the assumption and assignment of the Assumed Contracts, and all of the other transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

### Statutory Predicates

B.      The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9008, and 9014.

### Final Order

C.      This order (the "Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and that waiver of any applicable waiting period is appropriate, and expressly directs entry of judgment as set forth herein.

### Wind-Down of Negawatt Business Solutions, Inc.

D.      On June 19, 2014, the Bankruptcy Court entered the Global Settlement Order [D.I. 381], approving the Global Settlement.  Under the Global Settlement, Ziphany and its affiliated Debtor, Negawatt Business Solutions, Inc. ("NBS"), were each required to conduct a sale of all of their assets.  On August 6, 2014, subsequent to the entry of the Global Settlement

Order, the parties to the Global Settlement (the "Settlement Parties") entered into a letter

agreement (the "Sale Process Letter") under which they agreed that given NBSs' negative cash

flow and the nature of its assets, the time and expense associated with a sale of NBSs' assets

were not justified. In the Sale Process Letter, the Settlement Parties also agreed that,

notwithstanding the terms of the original Global Settlement, NBSs' assets would be wound down

by the Debtors rather than sold. The Sale Process Letter constitutes a valid amendment to the

Global Settlement and is binding on all parties to the Global Settlement.

### Adequate Marketing Efforts in Connection with the Ziphany Assets

E.      As demonstrated by (i) the testimony and other evidence proffered or

introduced at the Ziphany Sale Hearing and (ii) the representations of counsel made on the

record at the Ziphany Sale Hearing, the Debtors have thoroughly and fairly marketed the

Ziphany Assets and conducted the related sale process in good faith. All interested persons and

entities have been afforded a full, fair, and reasonable opportunity to (i) conduct due diligence

investigations, (ii) submit bids and to submit higher or otherwise better bids to purchase the

Ziphany Assets, and (iii) object or be heard with respect to the Motion and the relief granted by

this Order. The marketing process, including the Bidding Procedures were non-collusive,

designed and implemented in good faith, substantively and procedurally fair to all parties, and

obtained the highest and best value for the Ziphany Assets for the Debtors, their creditors, and

their estates. Through use of the Bidding Procedures, the Debtors, in consultation with EDF

Trading North America, LLC ("EDFT"), Vantage Commodities Financial Services I, LLC

("Vantage"), and the Official Committee of Unsecured Creditors (the "Committee"), determined

that the bid submitted by the Buyer and memorialized by the APA is the Prevailing Bid.

**Notice**

F.    As evidenced by the affidavits and certificates of service and publication previously filed with the Court, in light of the exigent circumstances of these bankruptcy cases and based on the representations of counsel at the Ziphany Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Ziphany Sale, and the assumption and assignment of the Assumed Contracts, all of the other transactions contemplated by the APA, and the Ziphany Sale Hearing have been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), 6006(c), 9008 and 9014, and all applicable provisions of the Bankruptcy Code and the Local Rules; (ii) such notice was good, sufficient, reasonable, and appropriate under the particular circumstances of the Chapter 11 Cases, and reasonably calculated to reach and apprise all holders of Liens, claims, encumbrances, and other interests, including, without limitation, any holder asserting any rights or claims based on any successor or transferee liability, about the Motion, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, all of the other transactions contemplated by the APA, and the Ziphany Sale Hearing; and (iii) no other or further notice of the Motion, Ziphany Sale and the assumption and assignment of the Assumed Contracts, and any other transactions contemplated by the APA, the Ziphany Sale Hearing, or any matters in connection therewith, is or shall be required.

G.    On November 28, 2014, Ziphany served individualized notices (the "Assumption and Assignment Notice") of the potential assumption and assignment of the Assumed Contracts on the counterparties to such Assumed Contracts identified on Exhibit 1 thereto (each a "Contract Party"), which notice included (i) the Assumed Contracts that could potentially be assumed and assigned, (ii) the name of the counterparties to such Assumed Contracts, (iii) the amount, if any, determined by the Debtors to be necessary to be paid (the "Cure Amounts") as of the date of the Assumption and Assignment Notices upon the assumption

01:16344998.7

5

of the Assumed Contracts, and (iv) the deadline by which any Contract Party must object to the possible assumption by Ziphany and the assignment to the Buyer of the Assumed Contracts. On December 11, 2014, Ziphany served a supplemental notice (the "Supplemental Assumption and Assignment Notice", together with the Assumption and Assignment Notice, the "Cure Notices") of the potential assumption and assignment of the Assumed Contracts on the Contract Parties identified on Exhibit 1 thereto, which notice included (i) the Assumed Contracts that could potentially be assumed and assigned, (ii) the name of the Contract Party, (iii) the Cure Amount as of the date of the Supplemental Assumption Notices upon the assumption of the Assumed Contracts, and (iv) the deadline by which any Contract Party must object to the possible assumption by the Debtors and assignment to the Buyer of the Assumed Contracts. The service of such Cure Notices was good, sufficient, and appropriate under the particular circumstances, and no other or further notice of the assumption and assignment of the Assumed Contracts or the applicable Cure Amounts is required. Each Contract Party to the Assumed Contracts has had an opportunity to object to the assumption by the Debtors and the assignment to the Buyer of the Assumed Contracts and to the applicable Cure Amounts set forth in the Cure Notices.

H.    The Cure Amounts set forth in the Cure Notices (as such amounts may have been subsequently modified) are the sole amounts necessary under Sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Assumed Contracts. In accordance with the APA, the Buyer shall pay the Cure Amount for each of the Assumed Contracts in the amounts set forth on Exhibit 2 attached to this Order.

### Corporate Authority

I.    Ziphany (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all of the necessary corporate

power and authority to consummate the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by Ziphany of the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly set forth in the APA, to consummate the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts.

### Good Faith

J.      The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision and any other applicable or similar provisions under bankruptcy and nonbankruptcy law. The Buyer has at all times acted in good faith within the meaning of section 363(m) of the Bankruptcy Code in consummating the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts. The APA and the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, were negotiated, proposed, and entered into by the Seller and the Buyer without collusion, in good faith, and from arm's length bargaining positions, and such parties are "unrelated" for purposes of ERISA Section 4204, as may be applicable. Neither the Seller, the Buyer, or their respective agents, officials, personnel, representatives, and advisors, have engaged in any conduct that would cause or permit the avoidance of the APA or any of the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, or the imposition of costs, fees, expenses, or damages under section 363(n) of the Bankruptcy Code.

01:16344998.7

None of the Buyer or its respective agents, officials, personnel, representatives, or advisors is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

## Business Justification

K.    The Debtors have demonstrated good, sufficient, and sound business reasons and compelling circumstances to enter into the APA and to consummate the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and creditors, and other parties in interest.  Such business reasons include, but are not limited to, the facts that (i) the APA and the terms thereof constitute the highest and best offer for the Ziphany Assets and provide fair and reasonable consideration for the Ziphany Assets, (ii) no other entity or group of entities has offered to purchase the Ziphany Assets for greater economic value to the Debtors or their estates than the Buyer, (iii) the Ziphany Sale pursuant to the terms of the APA presents the best opportunity to realize the value of the Ziphany Assets and avoid decline and devaluation of the Ziphany Assets, (iv) the consideration to be provided by the Buyer under the APA exceeds the liquidation value of the Ziphany Assets, and (v) unless the Ziphany Sale and all of the other transactions contemplated by the APA are concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries to creditors may be diminished.  The Debtors' determination that the APA constitutes the highest and best offer for the Ziphany Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L.    The terms and conditions of the APA, including, without limitation, the consideration to be realized by the Debtors pursuant to the APA, are fair and reasonable. Approval of the Motion, the APA, and the transactions contemplated thereby, including, without

limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

### No Fraudulent Transfer

M.      The consideration provided by the Buyer for the Ziphany Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the Ziphany Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and of each state, territory, possession, and the District of Columbia.

N.      The Buyer is not a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Buyer and any of the Debtors, and there is no continuity of enterprise between the Buyer and any of the Debtors. The Buyer is not holding itself out to the public as a continuation of any of the Debtors. The Buyer is not a successor to any of the Debtors or their estates, and none of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale or the assumption and assignment of the Assumed Contracts, amounts to a consolidation, merger, or de facto merger of the Buyer with or into any of the Debtors. None of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale or the assumption and assignment of the Assumed Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or of any state, territory, possession or the District of Columbia.

### Free and Clear

O.      The transfers of the Ziphany Assets to the Buyer will be legal, valid, and effective transfers of the Ziphany Assets, and will vest the Buyer with all right, title, and interest

of the Seller to the Ziphany Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than any Liens created by the Buyer), including, without limitation, rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any successor or transferee liability, including, without limitation, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Seller's or the Buyer's interest in the Ziphany Assets or any similar rights, and (ii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, without limitation, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, and (b) all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Seller or any of the Seller's predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, claims otherwise arising under doctrines of successor or transferee liability, or under federal or state tax laws.

        P.      The Seller may transfer the Ziphany Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than any Liens created by the Buyer), including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, and (ii) non-Debtor parties to the Assumed Contracts,

who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, and (ii) non-Debtor parties to the Assumed Contracts who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, including, without limitation, section 363(f)(5) of the Bankruptcy Code, because the holders of any such interest could be compelled in a legal or equitable proceeding to accept monetary satisfaction on account of such interest, and are adequately protected by having their interests, if any, attach to the proceeds of the Ziphany Sale ultimately attributable to the Ziphany Assets in which each such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that each such creditor had prior to the sale, subject to any claims and defenses the Debtors, their estates, or other parties may possess with respect thereto.

      Q.    The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Ziphany Assets was not free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than any Liens created by the Buyer), including, without limitation, rights or claims based on any taxes or successor or transferee liability, or (ii) if the Buyer would, or in the future could, be liable for any such Liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Buyer with respect to the Ziphany Assets, to the Assumed Liabilities). The Buyer will not consummate the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Buyer, its respective

affiliates, its respective present or contemplated members, partners or shareholders, or the Ziphany Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability, except for the Assumed Liabilities.

R.    Not transferring the Ziphany Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than any Liens created by the Buyer), including, without limitation, rights or claims based on successor or transferee liability, except for the Assumed Liabilities, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Ziphany Assets other than pursuant to a transfer that is free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

S.    The Buyer would not have entered into the APA and will not consummate the transactions contemplated thereby unless this Court expressly orders that, without limiting the generality of the foregoing, none of the Buyer, its respective affiliates, its respective present or contemplated members, partners or shareholders, or the Ziphany Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, claims, encumbrances, and other interests relating to any U.S. federal, state, or local income tax liabilities, including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors are liable for or incur in connection with consummation of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts.

01:16344998.7

## **Validity of Transfer**

T.      The consummation of the transactions contemplated by the APA,

including, without limitation, the Ziphany Sale and the assumption and assignment of the

Assumed Contracts, is legal, valid, and properly authorized under all applicable provisions of the

Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365, and all of the

applicable requirements of such sections have been complied with in respect of the transactions

contemplated under the APA.

U.      The Ziphany Assets constitute property of the Ziphany's estate, and good

title thereto is vested in the Ziphany estate within the meaning of section 541(a) of the

Bankruptcy Code.  Ziphany is the sole and lawful owner of the Ziphany Assets, and no other

person has any ownership right, title, or interest therein.

## **Assumed Contracts**

V.      The assumption and assignment of the Assumed Contracts, free and clear

of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever,

pursuant to the terms of this Order is integral to the transactions contemplated by the APA and is

in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and

represents a reasonable exercise of the Debtors' sound and prudent business judgment.

W.      Pursuant to the terms of the APA, the Buyer has (i) either cured or

provided adequate assurance of cure of, any monetary default existing under any of the Assumed

Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided

compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to

such party resulting from a monetary default under any of the Assumed Contracts, within the

meaning of section 365(b)(1)(B) of the Bankruptcy Code.

01:16344998.7

13

X.      The Buyer has demonstrated adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the contracts or other restrictions prohibiting the assignment or transfer.

Y.      The releases set forth in paragraph 30 of this Order irrevocably and unconditionally release parties that were critical to the formulation, negotiation, and implementation of the APA and the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts.  The releases include Buyer and its affiliates, Vantage and its affiliates, EDFT and its affiliates, and all such parties' past, present and future shareholders, partners, members, board of directors and/or supervisors, managers, officers, employees, agents, representatives and advisors (collectively, the "Released Parties").

**Compelling Circumstances for an Immediate Sale**

Z.      To maximize the value of the Ziphany Assets and preserve the viability of the business to which the Ziphany Assets relate, it is essential that the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, occur within the time constraints set forth in the Motion and the APA. Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts.

01:16344998.7

AA.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, prior to, and outside of, a chapter 11 plan.  The transactions contemplated by the APA, including, without limitation, the Ziphany Sale, and the assumption and assignment of the Assumed Contracts, neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore do not constitute a <u>sub rosa</u> plan.

BB.    Given all of the circumstances of the Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the APA, the consummation of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, constitutes a reasonable and sound exercise of the Debtors' business judgment.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

<u>**General Provisions**</u>

1.    The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA and the consummation of the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, is authorized and approved.  The Motion complies with all provisions of Local Rule 6004-1 other than those previously waived by the Court.

2.    Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included in such objections and responses, are overruled on the merits and denied with prejudice.

01:16344998.7

15

### Approval of the APA

3.      The APA, attached hereto as <u>Exhibit 1</u>, all ancillary documents, and the transactions contemplated thereby, the Ziphany Sale and the assumption and assignment of the Assumed Contracts and all the terms and conditions thereof, are approved.  If there is any conflict between the APA and this Order, this Order shall govern.

4.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the APA, and all ancillary documents and to consummate the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, pursuant to, and in accordance with, the terms and provisions of the APA and this Order.

5.      The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments and documents that the Seller or the Buyer reasonably deem necessary or appropriate to implement the APA and effectuate the transactions contemplated thereby, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, and to take all further actions as may reasonably be required by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession the Ziphany Assets, or as may be necessary or appropriate to the performance of any other obligations as contemplated by the APA.

6.      Nothing contained in any plan confirmed in any of the Chapter 11 Cases, any order confirming any such plan, any order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any order dismissing any of the Debtors' bankruptcy

cases shall conflict with or derogate from the provisions of the APA or this Sale Order in any material way.

### Transfer of the Ziphany Assets Free and Clear

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, in accordance with the APA, (a) the Ziphany Assets shall be transferred to the Buyer and (b) the Ziphany Assets shall be free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than any Liens created by the Buyer), including, without limitation, rights or claims based on any taxes or successor or transferee liability.

8.      Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding Liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Seller or the Ziphany Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Seller, the Ziphany Assets, the use or operation of the Ziphany Assets prior to the Closing Date, or the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Ziphany Assets, or such persons' or entities' Liens, claims, encumbrances, or other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability.

01:16344998.7

9.    This Order (a) shall be effective as a determination that, as of the Closing Date, (i) no Liens, claims, encumbrances, or other interests of any kind or nature (other than any Liens created by the Buyer) shall be assertable against the Buyer, its affiliates, their respective present or contemplated members, partners or shareholders, successors, or assigns, or any of its or their respective assets (including, without limitation, the Ziphany Assets), (ii) the Ziphany Assets shall have been transferred to the Buyer free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than any Liens created by the Buyer), and (iii) the transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

10.    The transfers of the Ziphany Assets to the Buyer in accordance with the APA constitute legal, valid, and effective transfers of the Ziphany Assets and shall vest the Buyer with all right, title, and interest of the Seller in and to the Ziphany Assets, free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability (other than any Liens created by the Buyer), as set forth in section 363(f) of the Bankruptcy Code.

11.    On the Closing Date, the Seller's creditors and any other holder of a Lien, claim, encumbrance, or other interest of any kind or nature whatsoever (other than any Liens created by the Buyer), are authorized and directed to execute such documents and take all other actions as may be necessary to release their Liens, claims, encumbrances, or other interests in the Ziphany Assets, if any, as such Liens, claims, encumbrances, or other interests may have been recorded or may otherwise exist.

12.    If any person or entity that has filed financing statements, mortgages, mechanic's Liens, lis pendens, or other documents or agreements evidencing a Lien, claim, encumbrance, or other interest (other than any Liens created by the Buyer) in the Ziphany Assets shall not have delivered to the Seller prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, claims, encumbrances, or other interests that the person or entity has with respect to the Ziphany Assets, or otherwise, then (a) the Seller and the Buyer are each authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Seller and the Ziphany Assets, and (b) the Buyer is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever in the Ziphany Assets.

13.    On the Closing Date, all persons or entities in possession of any of the Ziphany Assets are directed to surrender possession of such Ziphany Assets to the Buyer.

14.    Following the Closing Date, none of the Debtors, their affiliates, or any creditor or holder of any Lien, claim, encumbrance, or other interest of any kind or nature whatsoever (other than Liens created by the Buyer) shall interfere with the Buyer's title to, or use and enjoyment of, the Ziphany Assets, based on, or related to, any such Lien, claim,

01:16344998.7

encumbrance, or other interest, or based on any actions the Debtors may take in their bankruptcy cases or otherwise.

15.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Ziphany Assets to the Buyer in accordance with the APA and this Order; provided, however, that the foregoing restriction shall not prevent any person or entity from appealing this Order or opposing any appeal of this Order.

16.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to grant or renew any permit, license, or similar grant relating to the operation of the Ziphany Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts.

### Assumption and Assignment of the Assumed Contracts

17.    Except as otherwise expressly provided in the APA or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to assume each of the Assumed Contracts free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than any Liens created by the Buyer).

18.    The Buyer shall provide the Seller a list of those Contracts that it elects to have assumed and assigned (the "Designated Contracts") to the Buyer at least three (3) Business Days before the Closing Date (the "Designation Deadline").  The Buyer shall be entitled to remove certain Contracts from the list of Designated Contracts at any time prior to the Designation Deadline.  In the event that the Buyer removes any of such Contracts from such list,

01:16344998.7

the Seller will provide the relevant counterparty written notice that the applicable Contract is no longer identified as a Designated Contract.

19.    The Cure Amounts set forth on Exhibit 2 attached to this Order, are the sole amounts necessary to be paid upon assumption of the Assumed Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code.  Upon the payment of the Cure Amounts, if any, by the Buyer, the Assumed Contracts shall remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any based on performance or lack thereof prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause.  After the payment of the Cure Amounts by the Buyer, none of the Debtors or the Buyer shall have any further liabilities to the counterparties to the Assumed Contracts other than the Buyer's obligations under the Assumed Contracts that become due and payable after the Closing Date.  To the extent that an Assumed Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors of such Assumed Contracts have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, (i) the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts, (ii) the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, and (iii) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

01:16344998.7

20.     The Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

21.     There shall be no right to payment, termination, modification, acceleration or cancellation, assignment fees, increases, or any other fees charged to the Debtors or the Buyer as a result of the execution and delivery by Buyer of the APA or related documents, the consummation of the transactions contemplated therein, or the compliance by Buyer with any provisions in the APA.  The validity of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale, and the assumption and assignment of the Assumed Contracts, shall not be affected by any dispute between any of the Debtors or their affiliates and another party to an Assumed Contract regarding the payment of any amount, including any cure amount under the Bankruptcy Code.  Upon assignment to the Buyer, the Assumed Contracts shall be valid and binding, in full force and effect, and enforceable by the Buyer in accordance with their respective terms.

22.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts and existing as of and including the Closing Date, or under the APA or arising by reason of the consummation of transactions contemplated by the APA, including, without limitation, the Ziphany Sale, and the assumption and assignment of the Assumed Contracts.  Any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code

01:16344998.7

and otherwise, if such party failed to object to the assumption and assignment of such Assumed Contract.

### No Successor or Transferee Liability

23.    None of the Buyer, its present or contemplated members, partners or shareholders, its respective successors or assigns, or any of the foregoing's respective affiliates, agents, officials, personnel, representatives, or advisors shall have any liability for any claim assertable against the Debtors or their estate or related to the Ziphany Assets.  The Buyer shall not be deemed, as a result of any action taken in connection with the APA or any of the transactions or documents ancillary thereto or contemplated thereby, or in connection with the transfer of the Ziphany Assets, (a) to be a legal successor, or otherwise be deemed a successor to the Debtors, (b) to have, de facto or otherwise, merged with or into the Debtors, or (c) to be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, without limitation, under any theory of successor or transferee liability, de facto merger or continuity, environmental, tax, labor and employment, products, or antitrust liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

24.    Effective upon the Closing Date, and except as otherwise expressly provided in this Order, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against the Buyer, its respective past, present, or contemplated members, partners or shareholders, its respective predecessors, its respective successors, assigns, or affiliates, or its respective assets, including,

01:16344998.7

23

without limitation, the Ziphany Assets, with respect to any claim against the Debtors, including, without limitation, the following actions: (a) commencing or continuing any action or other proceeding pending or threatened against the Debtors as against the Buyer, its respective past, present, or contemplated members or shareholders, its respective predecessors, its respective successors, assigns, or affiliates, or its respective assets, including, without limitation, the Ziphany Assets, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors as against the Buyer, its respective past, present, or contemplated members or shareholders, its respective predecessors, its respective successors, assigns, or affiliates, or its respective assets, including, without limitation, the Ziphany Assets, (c) creating, perfecting, or enforcing any Lien, claim, interest, or encumbrance against the Debtors as against the Buyer, its respective past, present, or contemplated members or shareholders, its respective predecessors, its respective successors, assigns, or affiliates, or its respective assets, including, without limitation, the Ziphany Assets, (d) asserting any setoff, right of subrogation, or recoupment of any kind for any obligation of any of the Debtors as against any obligation due the Buyer, its respective past, present, or contemplated members or shareholders, its respective predecessors, its respective successors, assigns, or affiliates, or its respective assets, including, without limitation, the Ziphany Assets (e) commencing or continuing any action, in any manner or place, that does not comply, or is inconsistent with, the provisions of this Order, or the agreements or actions contemplated or taken in respect thereof, or (f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Ziphany Assets or conduct any of the businesses operated with such assets.

        25.     Except for the Assumed Liabilities (solely in the case of the Buyer with respect to the Ziphany Assets) or as expressly provided in the APA or this Order, the Buyer shall not have any liability or responsibility for any liability or other obligation of the Seller or its

estate arising under or related to the Ziphany Assets. Without limiting the generality of the foregoing, and except as expressly provided in the APA or this Order, the Buyer shall not be liable for any Liens, claims, encumbrances, or other interests of any kind or nature against the Seller or its estate or any of their predecessors or affiliates, and the Buyer shall have no successor, transferee, or vicarious liabilities of any kind or character, including, without limitation, liabilities based on any theory of antitrust, environmental, tax, successor, or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Seller or its estate or any obligations of the Seller or its Estate arising prior to the Closing Date.

26. Upon the Closing Date, the Seller shall have no liability or responsibility for the Assumed Liabilities associated therewith.

27. Without limiting the generality of the foregoing, none of the Buyer, its respective affiliates, its respective present or contemplated members, partners or shareholders, or the Ziphany Assets shall have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, claims, encumbrances, and other interests relating to any U.S. federal, state, or local income tax liabilities, including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors are obligated for or incur in connection with consummation of the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts.

28. This Order (a) shall be effective as a determination that, except for the Assumed Liabilities (solely in the case of the Buyer with respect to the Ziphany Assets), on or

prior to the Closing Date, all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Seller with respect to the Ziphany Assets have been unconditionally released and terminated, and that the transfers described in this Order have been effected, and (b) shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Ziphany Assets.

29.     Each and every federal, state, and local governmental agency or department is authorized to accept any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts.

30.     To the fullest extent permissible under applicable law, except as otherwise provided in the APA or this Order, the Debtors irrevocably and unconditionally release, remise, and forever discharge the Buyer and its affiliates, Vantage and its affiliates and EDFT and its affiliates from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interests or causes of action whatsoever, at law or in equity, known or unknown, which the Debtors, their estates and their affiliates might now or subsequently may have, based on, relating to or arising out of the Auction, the APA and this Order, the transactions contemplated by the APA and this Order, the ownership, use or operation of the Ziphany Assets or the condition, quality, status or nature of the Ziphany Assets.

01:16344998.7

31.     The transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal.  The Buyer is a purchaser in good faith and the Buyer, and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

32.     The Buyer has given fair and substantial consideration under the APA for the benefit of the Debtors and their creditors and estates.  The consideration provided by the Buyer for the Ziphany Assets under the APA is greater than the liquidation value of the Ziphany Assets, and shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

33.     The consideration provided by the Buyer for the Ziphany Assets under the APA is fair and reasonable, and the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, may not be avoided under section 363(n) of the Bankruptcy Code.

**Sale Proceeds and Cash Accounts**

34.     Within two (2) business days following the Closing Date, the net proceeds from the Ziphany Sale shall be paid by the Debtors to Settlement Fund (as defined in the Global Settlement Order) in accordance with the Global Settlement Order.

01:16344998.7

**Related Relief**

35.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order, and may, subject to the terms and conditions of the APA, and in their discretion and without further delay, close the transactions contemplated under the APA and immediately take any action and perform any act authorized under this Order.

36.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

37.     The terms and provisions of the APA and this Order shall be binding in all respects upon the Debtors, their respective affiliates, estates, and creditors, all holders of equity interests in any of the Debtors, all holders of any Claims, all counterparties to each Assumed Contract, all interested parties in the Chapter 11 Cases and their respective successors and assigns, the Buyer and its successors and assignees, and any trustees, if any subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Buyer, and their respective successors and assigns, and each of the foregoing's respective agents, officials, personnel, representatives, and advisors.

01:16344998.7

28

38.     No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, the Motion, and this Order.

39.     The terms and provisions of the APA and this Order shall inure to the benefit of the Debtors, their estates, and their creditors, the Buyer, and each of the foregoing's respective agents, officials, personnel, representatives, and advisors.

40.     The failure to specifically include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

41.     The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates. Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtors' estates shall be subject to further order of the Court, on ten (10) days' notice.

42.     The provisions of this Order are non-severable and mutually dependent on each other.

43.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

44.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion or the transactions contemplated by the APA, including, without limitation, the Ziphany Sale and the assumption and assignment of the Assumed Contracts, the terms of this Order shall govern.

01:16344998.7

45.    This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the APA, all ancillary documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Ziphany Assets to the Buyer, (b) compel delivery of the Purchase Price or performance of other obligations owed by or to the Debtors, (c) resolve any disputes arising under or related to the APA, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyer against the assertion of any Lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Ziphany Assets.

46.    The Buyer shall pay Cure Amounts with respect to Assumed Contracts on the Closing Date.

47.    Nothing herein or in the APA (i) releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would otherwise be subject to as the owner or operator of property after the Closing Date, (ii) authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuance of any obligation thereunder, without compliance with applicable legal requirements under police or regulatory law, and (iii) divests any tribunal of any jurisdiction that it may have under environmental law to interpret this Order or to adjudicate any defense asserted under this Order.

Dated: January 7, 2015
      Wilmington, Delaware

                                              CHRISTOPHER S. SONTCHI,
                                              UNITED STATES BANKRUPTCY JUDGE