## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

*In re*

GRIDWAY ENERGY HOLDINGS, INC. *et al.*,

Debtors.[1]

-------------------------------------------------------------x

Chapter 11

Case No. 14-10833 (CSS)

Jointly Administered

**Hearing Date: October 19, 2015, at 1:00 p.m. (ET)**
**Obj. Deadline: October 13, 2015, at 4:00 p.m. (ET)**

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DISMISSAL OF CERTAIN OF THE DEBTORS' CHAPTER 11 CASES; (II) AUTHORIZING THE DISSOLUTION OF CERTAIN OF THE DEBTORS' CORPORATE ENTITIES; (III) MODIFYING THE CAPTION OF THE REMAINING CHAPTER 11 CASES; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the

"**Debtors**") hereby submit this motion (the "**Motion**") for entry of an order, substantially in the

form attached hereto as Exhibit A (the "**Proposed Order**"), pursuant to sections 105(a), 305, and

1112(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), (i) approving the

dismissal of the chapter 11 cases identified on Exhibit 1 to the Proposed Order (collectively, the

"**Concluded Debtor Cases**"); (ii) authorizing, in the Debtors' sole discretion, the dissolution of

the corporate entities of the Concluded Debtor Cases; and (iii) granting related relief.  In support

of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Gridway Energy Holdings, Inc. (5072); Glacial Energy Holdings (3292); Glacial Energy, Inc. (1189); Glacial Energy of New York (0776); Glacial Energy of New England, Inc. (1724); Glacial Energy of Maryland, Inc. (7173); Glacial Energy of California, Inc. (1795 ); Glacial Energy of Illinois, Inc. (1796); Glacial Energy of New Jersey, Inc. (8671); Glacial Energy of Pennsylvania, Inc. (9762); Glacial Energy of Texas (1517); Glacial Energy of Washington DC, Inc. (5548); Glacial Energy of Ohio, Inc. (0103); Glacial Energy of Michigan, Inc. (7110); Glacial Natural Gas, Inc. (0165); Negawatt Business Solutions (6299); Negawatt Business Solutions, Inc. (f/k/a/ Gridway Energy Partners, Inc.) (7086); Ziphany, L.L.C. (7934); and Glacial Energy VI, LLC (1142).  The location of the headquarters of Glacial Energy VI, LLC is 5326 Yacht Haven Grande, Box 36, St. Thomas, VI 00802.  The location of the headquarters for the remaining Debtors is 5326 Yacht Haven Grande Box 36, St. Thomas, Virgin Islands 00802.

## PRELIMINARY STATEMENT[2]

1.      The Debtors have negotiated and obtained Bankruptcy Court approval of the sale of substantially all of their assets during the pendency of these Chapter 11 Cases through two separate sales; namely, the Platinum/Agera Sale and the Ziphany Sale (together, the **"Sales"**).  Pursuant to a settlement agreement between certain parties in interest, the Chapter 11 Cases are being funded by Agera until the Debtors' operations and assets have been transferred to Agera pursuant to the asset purchase agreement.  To date, certain of the Debtors' operations and assets have been successfully transitioned in accordance with the asset purchase agreements (**"APAs"**) and sale orders approving the Sales.  Therefore, to the extent that the assets of certain of the Debtors have been transferred, the Debtors no longer have any basis or purpose for continuing those chapter 11 cases.  In addition, in connection with the Sales, either the Debtors have paid or the Purchasers have agreed to assume or provide payment of a majority of the administrative expense liabilities which have accrued against the Debtors since the Commencement Date.

2.      At this state of the Chapter 11 Cases, the Concluded Debtors do not have any unencumbered funds available for distribution to general unsecured creditors.  Accordingly, the Creditors' Committee, Agera, and the Lenders have reviewed the Motion and do not object to the relief being requested herein. [3]

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to such terms in the body of the Motion.

[3] As of the date hereof, one of the Concluded Debtors—Glacial Energy of New York ("**GENY**")—is a named defendant in a criminal proceeding currently pending in the Criminal Court of the State of New York at Docket # 2015 235 776.  The criminal complaint alleges, in part, that Gary Mole caused GENY to file fraudulent tax returns for 2008–2010.  The Debtors have discussed the relief sought herein with the Office of the New York State Attorney General, which has indicated that it does not oppose entry of an order dismissing GENY's bankruptcy case.

## JURISDICTION

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105(a), 305 and 1112(b) of the Bankruptcy Code.

## GENERAL BACKGROUND

4.      On April 10, 2014 (the "**Commencement Date**"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code, thereby commencing these cases (the "**Chapter 11 Cases**").  The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On April 24, 2014, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in the Chapter 11 Cases.

6.      Information regarding the Debtors' history and business operations, their capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Randy Lennan in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "**First Day Declaration**"), which is incorporated herein by reference.

## RELEVANT BACKGROUND

### A.  The Sale to Vantage

7.      On the Commencement Date, the Debtors filed a motion seeking approval of certain sales procedures and related relief [Docket No. 13] (the "**Sale Motion**").  Pursuant to the Sale Motion, the Debtors proposed to sell substantially all of their assets to Vantage Commodities Financial Services I, LLC ("**Vantage**"), as the stalking-horse bidder, or to such other purchaser who submitted a higher and better offer pursuant to the sale-and-bidding procedures proposed in the Sale Motion.

8.      On May 12, 2014, following extensive negotiations between the Debtors, the Creditors' Committee, Vantage, and EDF Trading North America LLC ("**EDFT**" and, together with Vantage, the "**Lenders**"), the parties reached a global settlement (the "**Global Settlement**") on the terms and conditions set forth in the *Joint Motion of the Debtors, Official Committee of Unsecured Creditors, Vantage Commodities Financial Services I, LLC and EDF Trading North America LLC for Entry of an Order Approving Settlement and Compromise Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019* [Docket No. 270] (the "**Global Settlement Motion**") that resolved, among other things, issues in connection with the Sale Motion.  Pursuant to the terms of the Global Settlement, the assets of Ziphany, LLC ("**Ziphany**") and Negawatt Business Solutions, Inc. ("**NBS**") were excluded from the proposed asset sale. The Global Settlement also provided for the creation of a settlement fund (the "**Settlement Fund**") of approximately $1.0 to $1.3 million (or higher, depending on the proceeds received from a subsequent sale of Ziphany's or NBS's assets), to pay the Creditors' Committee's expenses, as well as certain allowed Eligible Administrative Claims (as defined in the Global Settlement Motion).  As of the date hereof, by order of the Bankruptcy Court, the Settlement

Fund is being administered by the RPA Advisors, LLC at the direction of the Creditors'

Committee. *See Docket No. 905.*  On May 30, 2014, the Debtors and the Creditors' Committee

jointly filed the Global Settlement Motion seeking Court approval of the terms of the Global

Settlement.  On June 19, 2014, the Court entered an order [Docket No. 381] approving the

Global Settlement.

        9.        On May 14, 2014, the Court entered an order [Docket No. 191] that,

among other things, approved bidding procedures for the sale of substantially all of the Debtors'

assets (excluding the assets of Ziphany and NBS) (the "**Platinum/Agera Sale**").  On June 10,

2014, in accordance with that order, the Debtors commenced an auction, at the conclusion of

which on June 11, 2014, the Debtors selected Platinum Partners Value Arbitrage Fund LP

("**Platinum**") as the successful bidder.  On June 17, 2014, the Court entered an order [Docket

No. 377] (the "**Sale Order**") approving the Platinum/Agera Sale to Platinum.  Pursuant to

section 12.11 of the Asset Purchase Agreement by and Among Glacial Energy Holdings and

Platinum Partners Value Arbitrage Fund LP (the "**APA**"), Agera Energy LLC ("**Agera**") was

designated by Platinum as the Designated Buyer (as defined in the APA).  Among the assets sold

to Platinum were the selling Debtors' causes of action under chapter 5 of the Bankruptcy Code.

        10.       On June 18, 2014, the "Economic Closing" of the sale of substantially all

of the Debtors' assets to Agera occurred whereby, among other things, Agera paid the purchase

price under the APA.  However, in order to facilitate, among other things, Agera's regulatory

licensure process with the various jurisdictions' public utility commissions, the "Asset Transfer

Closing" was deferred.  In order to operate the Debtors' businesses between the Economic

Closing and the Asset Transfer Closing, the Debtors and Agera entered into a Transition Services

Agreement (the "**TSA**") pursuant to which the Debtors have provided, and will continue to

provide, certain services to Agera for which Agera is financially obligated.  As of the date hereof, the Debtors continue to provide the services under the TSA.

11.    On February 23, 2015, a partial asset transfer closing (the "**Initial Partial Asset Closing**") occurred, pursuant to which each of (i) Glacial Energy of New York, (ii) Glacial VI, LLC, (iii) Gridway Energy Holdings, Inc. and (iv) Negawatt Business Solutions transferred certain of their assets to Agera, pursuant to the terms of the APA.  *See* Docket No. 846.

12.    On July 13, 2015, a second partial asset transfer closing (the "**Second Partial Asset Closing**") occurred, pursuant to which each of (i) Glacial Energy of Texas, (ii) Glacial Energy of Ohio, Inc., (iii) Glacial Energy of Pennsylvania, Inc., (iv) Glacial Energy of New England, Inc., and (v) Glacial Natural Gas, Inc. transferred certain of their assets to Agera, pursuant to the terms of the APA.  *See* Docket No. 1032.

**B.  The Sale of Ziphany's Assets**

13.    On November 28, 2014, the Debtors filed a motion [Docket No. 664] seeking, among other things, entry of an order approving the sale of substantially all of the assets Ziphany, LLC (the "**Ziphany Sale**" and, together with the Platinum/Agera Sale, the "**Sales**") to the prevailing bidder at auction.

14.    At the conclusion of the auction, JKMV ACQ LLC ("**JKMV**" and, together with Platinum and Agera, the "**Purchasers**") was selected as the prevailing bidder, and on January 7, 2015, the Court entered an order approving the sale of Ziphany's assets to JKMV.  *See* Docket No. 748.

15.    On January 28, 2015, the sale of Ziphany's assets to JKMV closed.  *See* Docket No. 782.

16.     As a result of the closing of the Sales, each of (i) Ziphany, LLC; (ii) Glacial Energy of New York; (iii) Glacial VI, LLC; (iv) Negawatt Business Solutions; (v) Glacial Energy of Texas; (vi) Glacial Energy of Ohio, Inc.; (vii) Glacial Energy of Pennsylvania, Inc.; (viii) Glacial Energy of New England, Inc.; and (ix) Glacial Natural Gas, Inc., (collectively, the "**Concluded Debtors**") has transferred substantially all of its assets to the respective purchaser.

### C.  The Wind-Down of the Chapter 11 Cases

17.     On October 27, 2014, the Debtors filed the *Debtors' Motion Pursuant to Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Approving and Authorizing the Wind-Down Term Sheet by and Between the Debtors and Vantage Commodities Financial Services I, LLC* [Docket No. 572] (the "**Wind-Down Budgeting Motion**").  On November 24, 2014, the Court entered an order [Docket No. 646] (the "**Wind-Down Budgeting Order**") that approved an agreement between the Debtors, their lenders, and the Creditors' Committee that provided for, among other things, the funding of the Chapter 11 Cases through December 31, 2014, in order to wind down the Debtors' businesses.

18.     On February 27, 2015, the Debtors filed a *Motion for an Order (I) Converting Cases to Chapter 7 of the Bankruptcy Code and (II) Setting Bar Date for Filing Final Chapter 11 Professional Fee Applications and Establishing a Hearing Date Thereon* (the "**Conversion Motion**") [Docket No. 837].  As set forth in the Conversion Motion, the Wind-Down Budgeting Order only provided funding through December 2014.  As a result, the Debtors had insufficient funds to pay U.S. Trustee's fees and professional expenses necessary to enable it to continue in chapter 11.

19.     Thereafter, the Debtors and Agera engaged in negotiations to address the funding issues, ultimately reaching agreement on a settlement that would enable the Debtors to continue in chapter 11 while Agera obtained certain regulatory approvals and performed other critical tasks necessary to transition the Debtors' operations.

20.     Accordingly, on March 6, 2015, the Debtors filed the *Debtors' Motion for Entry of an Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving Settlement By and Among the Debtors, Platinum Partners Value Arbitrage Fund LP, and Agera Energy LLC* [Docket No. 862] (the "**Settlement Motion**").[4]  On April 6, 2015, the Court entered an order [Docket No. 905] (the "**Settlement Order**"), which approved the settlement pursuant to which Agera agreed to fund the Chapter 11 Cases, in accordance with the terms of the Settlement Order, until it had fully transitioned the Debtors' operations.  As of the date hereof, Agera has fully transitioned the operations of the Concluded Debtors, but the process remains ongoing with respect to the operations of the remaining Debtors.

## RELIEF REQUESTED

21.     By this Motion, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, (i) approving the dismissal of the Concluded Debtor Cases upon the filing of a certification of counsel, substantially in the form attached hereto as Exhibit B (the "**Certification**"), as soon as reasonably practicable following the payment of any then-accrued and unpaid fees to the U.S. Trustee (the "**U.S. Trustee Fees**"), (ii) authorizing, in the Debtors' sole discretion, the dissolution of the corporate entities in the Concluded Debtor Cases, (iii) modifying the caption of the remaining chapter 11 cases, and (iv) granting certain other related relief.

---

[4]  The Debtors also withdrew the Conversion Motion without prejudice.

01:17697662.6

8

## BASIS FOR RELIEF REQUESTED

### I.    Approval of Dismissal Process

#### A. Dismissal of the Concluded Debtor Cases Is Warranted Under Section 1112(b) of the Bankruptcy Code.

22.    The Court should approve the dismissal process because the Concluded Debtors lack the financial ability to bear the costs associated with formulating and confirming a plan of reorganization or liquidation, the Concluded Debtors have no remaining assets to administer, and conversion of the Concluded Debtor Cases to cases under chapter 7 of the Bankruptcy Code serves no purpose under these circumstances.

23.    Under section 1112(b) of the Bankruptcy Code, a court may dismiss a debtor's chapter 11 case "for cause."  11 U.S.C. § 1112(b); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  Section 1112(b) of the Bankruptcy Code states, in pertinent part, "on request of any party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . for cause . . . ."  A determination of cause is made by the court on a case-by-case basis.  *Albany Partners*, 749 F.2d at 674.  In addition, the decision to dismiss a case is particularly delegated to the bankruptcy court's sound discretion.  *See In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999) (citing *In re Atlas Supply Corp.*, 837 F.2d 1061, 1063 (5th Cir. 1988)).  Therefore, it is clear that the Court is authorized to dismiss the Concluded Debtor Cases upon a showing of "cause."

24.    The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; *see also In re Preferred*

*Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss

a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating

that a determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests

in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n.7 (5th

Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of

the Bankruptcy Code); *Albany Partners*, 749 F.2d at 674 (same).

        25.     Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of

sixteen grounds for dismissal.  11 U.S.C. § 1112(b)(4)(A)-(P); *Frieouf v. United States*, 938 F.2d

1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is

nonexhaustive); *In re Blunt*, 236 B.R. at 864 (same).  One such ground is where a party in

interest shows that there is an "inability to effectuate a plan [of reorganization]."  11 U.S.C.

§ 1112(b)(2)(A); *Preferred Door Co.*, 990 F.2d at 549; *Sullivan Cent. Plaza I*, 935 F.2d at 728.

Here, the Court may dismiss the Concluded Debtor Cases because the Concluded Debtors are

unable to confirm a plan.

        26.     Inability to confirm a plan arises when a debtor lacks the capacity to

"formulate a plan or carry one out" or where the "core" for a workable plan of reorganization

"does not exist."  *See Preferred Door*, 990 F.2d at 549 (quoting *Hall v. Vance*, 887 F.2d 1041,

1044 (10th Cir. 1989)) (finding an inability to effectuate a plan arises where debtor lacks

capacity to formulate a plan or carry one out); *In re Blunt*, 236 B.R. at 865 (finding cause to

dismiss debtor's case under section 1112(b)(2) of the Bankruptcy Code where "core" for a

workable plan of reorganization found to be nonexistent).

        27.     Here, it is simply not possible for the Concluded Debtors to confirm a

chapter 11 plan.  The Concluded Debtors have sold substantially all of their assets and are no

longer conducting any business operations.  As such, there is no business to reorganize, no viable

assets to liquidate, and the Concluded Debtors have insufficient funds to confirm a plan of

liquidation.  By continuing in bankruptcy, the Concluded Debtors would likely incur additional

administrative expenses, which there will be no funds to satisfy.  In sum, the Concluded Debtors

have met their burden of proof to show that cause exists to dismiss the Concluded Debtor Cases

under section 1112(b) of the Bankruptcy Code due to their inability to effectuate a plan of

reorganization.

28.    Once a court determines that cause exists to dismiss a chapter 11 case, the

court must also evaluate whether dismissal is in the best interests of the estate and creditors.  *See

In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183

B.R. 402, 411 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996); *In re Warner*, 83

B.R. 807, 809 (Bankr. M.D. Fla. 1988).  A variety of factors demonstrate that it is in the best

interests of the Concluded Debtors' estates and creditors to dismiss the Concluded Debtor Cases.

29.    A dismissal of a debtor's chapter 11 case meets the best-interests-of-

creditors test where a debtor has nothing left to reorganize and the debtor's assets are fixed and

liquidated.  *See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *In re Camden

Ordinance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a

reorganization to salvage a business which ceased doing business was not feasible); *In re

Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part

where there was "simply nothing to reorganize" and no reason to continue the reorganization).

As noted above, the Concluded Debtors have no business left to reorganize as all of the

Concluded Debtors' assets have been sold to the respective purchasers.

30.     Additionally, dismissal of the Concluded Debtor Cases is warranted because the alternative—conversion to chapter 7—would not serve the best interests of the Concluded Debtors' estates and creditors for the reasons discussed above.  One element of the best-interests tests focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy.  *In re Clark*, 1995 WL 495951, at *5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993).  The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise.  *See id.*  Here, the Concluded Debtors have no assets.  The appointment of a chapter 7 trustee would create administrative expenses, which, as a certain matter, there are no funds to satisfy, and indeed, there are no assets for a chapter 7 trustee to liquidate or administer.

31.     Numerous courts, both in this district and others, have approved dismissals under similar circumstances where the debtor lacks the requisite financial ability to confirm a chapter 11 plan and/or the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery.  *See, e.g.*, *Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015); *In re Int'l Garden Prods., Inc., et al.*, Case No. 10-13207 (KJC) (Bankr. D. Del. Oct. 8, 2011); *In re Penson Worldwide, Inc.*, Case No. 13-10061 (PJW) (Bankr. D. Del. Sept. 20, 2013); *In re Pure Beauty Salons & Boutiques, Inc.*, Case No. 11-13159 (MFW) (Bankr. D. Del. June 27, 2013).

**B. Dismissal of the Concluded Debtor Cases Is Warranted Under Section 305(a)(1) of the Bankruptcy Code.**

32.     Alternatively, cause exists to dismiss the Concluded Debtor Cases

pursuant to section 305(a) of the Bankruptcy Code, which provides, in pertinent part:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> > (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).

33.     In applying section 305(a) of the Bankruptcy Code, courts have

considered a wide range of factors, including, but not limited to:

> (a)     economy and efficiency of administration;
>
> (b)     whether federal proceedings are necessary to reach a just and equitable solution;
>
> (c)     whether there is an alternative means of achieving an equitable distribution of assets; and
>
> (d)     whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.

*See In re Crown Village Farm, LLC*, Case No. 09-11522 (KG), U.S. Bankr. LEXIS at *24

(Bankr. D. Del. June 12, 2009) (enumerating section 305(a) factors and denying motion only

because dismissal or abstention would have a deleterious effect on the administration of the

debtor's chapter 11 case "which would languish while core issues were tried elsewhere"); *see*

*also In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996).  However, "the exact factors to be

considered and the weight to be given to each of them is highly sensitive to the facts of each

individual case." *Mazzocone*, 200 B.R. at 575.

34.     Dismissal of the Concluded Debtor Cases is warranted under section

305(a)(1) of the Bankruptcy Code for the same reasons that "cause" exists to dismiss these cases

pursuant to section 1112(b) of the Bankruptcy Code:  the estates have no remaining assets to be

distributed to creditors and no remaining bankruptcy purpose exists.  Keeping the Concluded

Debtors in bankruptcy—either under chapter 11 or chapter 7—will not yield results that provide

a distribution to creditors and would only serve to create administrative liabilities of the estates

that will go unsatisfied.

## II.    Certification of Counsel and Request for Dismissal

35.    After the U.S. Trustee Fees have been paid, the Debtors request that the

Court dismiss the Concluded Debtor Cases upon the filing of the Certification, at which time the

Concluded Debtor Cases will be dismissed without the need for a further Order of the Court.

## III.    Authority to Dissolve the Concluded Debtors' Corporate Entities

36.    The Debtors submit that the relief requested in this Motion with respect to

the proposed dissolution of the Concluded Debtors' corporate entities is appropriate under the

circumstances.  The Concluded Debtors' corporate entities have no further business to conduct or

purpose for incorporation, and absent their prompt dissolution, the Concluded Debtors' corporate

entities may continue to be burdened by accruing tax liabilities.  Thus, it may be in the best

interests of the Concluded Debtors' estates to have the Concluded Debtors' corporate entities,

which have no further business operations or purpose, dissolve as soon as practicable.

## NOTICE

37.    Notice of this Motion has been given to: (i) the U.S. Trustee; (ii) counsel

to the Debtors' prepetition secured lender; (iii) counsel to the Creditors' Committee; (iv) counsel

to Agera; and (v) all parties requesting notice in the Chapter 11 Cases pursuant to Rule 2002 of

the Federal Rules of Bankruptcy Procedure as of the date hereof.  Additionally, the Debtors

intend to serve a one-page notice upon the filing of this Motion, substantially in the form

01:17697662.6

attached hereto as <u>Exhibit C</u>, via first-class mail, postage-prepaid, upon all creditors and parties

in interest in the Chapter 11 Cases.  In light of the nature of the relief requested, the Debtors

submit that no further notice is required or needed under the circumstances.

   38. A copy of the Motion is available on the Court's website:

www.deb.uscourts.gov.  Additional copies of the Motion are available for free on the website

maintained by Rust Consulting / Omni Bankruptcy ("**<u>Rust</u>**"), the claims and noticing agent in the

Chapter 11 Cases, at http://omnimgt.com/sblite/gridwayenergy/.

01:17697662.6

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) approving the dismissal of the Concluded Debtor Cases; (ii) authorizing, in the Debtors' sole discretion, the dissolution of the Concluded Debtors' corporate entities; (iii) modifying the caption of the remaining chapter 11 cases, and (iv) granting to the Debtors such other and further relief as the Court may deem just and proper.

Dated:    September 28, 2015          YOUNG CONAWAY STARGATT & TAYLOR, LLP
          Wilmington, Delaware

                                      */s/ Donald J. Bowman, Jr.*
                                      Joseph M. Barry (No. 4221)
                                      Donald J. Bowman, Jr. (No. 4383)
                                      Travis G. Buchanan (No. 5595)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone:  302.571.6600
                                      Facsimile:  302.571.1253


                                      *Attorneys for the Debtors and Debtors in Possession*

01:17697662.6